## MEACHAM v. WILLIAMS, ET AL.

1. A bill is multifarious where several defendants are charged with distinct wrongful acts relative to different slaves to which the complainant had an exuitable title, although the title was precisely the same to all the slaves, and the general chargeof fraudulent combination between the several defendants is not sufficient to authorise a joint suit.

Appeal from the decree of the Court of Chancery for the 15th District.

THE case made by the bill may be thus stated.

The complainant, Leah Meacham, a *feme covert*, sueing by her *prochein amie*, asserts that she is entitled to the separate use, possession and control of certain slaves, to-wit : Sarah and her children Spencer and Young, under the terms of a deed of gift executed by her mother Nancy Renwick, on the 4th of October, 1819, in the State of South-Carolina. This deed is exhibited, and its *habendum* is in these words : "which said three negroes, and the future increase of the said Sarah, I lend to the said Leah during her natural life, to her sole, separate and exclusive use and behoof, and after her death I give and grant the said negroes, and the future increase of the said Sarah, to the children lawfully begotten of the said Leah, share and share alike, as tenants in common, without any right of survivorship."

At the time of the execution of this deed, the complainant was the wife of John Mecham, who was living when the bill was filed, and both then resided in South-Carolina, but at the filing of the bill, in this State. After the delivery of the slaves named in the deed, Sarah, the woman, has had increase, a girl named Ann, (who also has children, whose names are unknown,) George, commonly called Pompey, and Dick, together with other children. In February, 1843, one Thomas Williams and James H. Meacham, a son of the comr

plainant, confederating together, fraudulently contrived to obtain possession of the slaves, Young, Dick, and Ann, who since has had a child, and for the purpose of defrauding the complainants, run the same slaves to Sumter county, and there caused them to be sold on some pretended claims or executions which Williams carried with him from Benton, with the intention and for the purpose of perfecting the fraud, designed by him and Mecham. Williams became the purchaser, and left the slaves with one William N. Wyatt, of Perry county. The bill then charges that John Gooden and Lawson McKee, with citizens of Randolph county, holding some pretended claims against said James H. Mecham, and combining with him to defraud the complainant, sued out an attachment against said Mecham, and caused the same to be levied by one Richard Wheaton, who is said to be a bailiff of Randolph county, on the slave George, commonly called Pompey, and took the said slave out of the complainant's possession. That Wheaton, combining with Gooden, McKee, and said Meacham to defraud the complainant, exposed the said slave to sale at an hour not authorised by law, and after the usual sale hour; that McKee bid one hundred dollars for the slave, and in pursuance of the fraudulent combination, and to prevent the complainant from interposing a claim, the said Wheaton immediately knocked him down at that sum, when in point of fact the slave was reasonably worth seven hundred dollars; that McKee, immediately after it was announced he was the purchaser of the slave, took him into possession, and placed him with one William Brown, who is charged as a confederate with McKee and Gooden, and the slave by him was carried to parts unknown, and as the complainant believes, is in the possession or under the control of the said Gooden, McKee, or Brown.

The bill further charges, that the slave Spence has been taken from her possession, by her husband John Mecham, and carried to parts unknown, and that he is, as the complainant believes, under the control of the said Williams.

The slaves are all charged to be family slaves, to whom the complainant is greatly attached, as the gift of an aged mother, and as having raised most of them. That for these reasons,

as well as others stated in the bill, she cannot be compensated in damages for the conversion of the slaves.

It further charges that Williams and Wyatt, as the complainant has reason to believe, will, in further consumation of their united fraud, carry the slaves Dick, Young and Ann, with her child, to parts unknown, beyond the jurisdiction of the court, unless restrained by injunction. And that Gooden, McKee, and Brown will do the same with the slave George.

The bill then charges a general combination between Williams, Wyatt, Gooden, McKee, Brown, Wheaton, and James H. Mecham, to wrong and defraud the complainant, and prays process as to them and John Mecham, her husband.

The bill prays that the defendants may be compelled to restore the specific slaves, for an injunction against removing them out of the State, and for general relief.

The chancellor dismissed the bill, on motion, as containing no equity. 1. Because the complainant had an adequate remedy at law. 2. Because it is multifarious, in joining different defendants, who have no connexion with each other in the matters complained of.

The complainant appealed from this decree, and it is now assigned as error.

B. M. ALLISON, with whom was S. F. RICE, for the appellants, made the following points:

1. By the terms of the deed of gift, the slaves are given to the complainant for life, to her sole and separate use. It is therefore an equitable estate, which a court of equity will sedulously guard and protect. (2 Story's Eq. 608; Calhoun v. Cozens, 3 Ala. Rep. 502; Harkens v. Coalter, 2 Porter, 476; Bell v. Hagan, 1 Stewart, 536, Swift v. Fitzhugh, 9 Porter, 39; ib. 59; Thomas v. Davis, 6 Ala. 113; ib. 362.)

2. The action of *Trover* or *Detinue* would not afford an adequate remedy, even if the complainant was at liberty to bring either of them. (Hardeman v. Sims, 3 Ala. R. 747; Baker v. Rowan, 2 S. & P. 371.)

3. A demurrer for multifariousness will hold only when the bill claims several matters of different nature; but when one general right is demanded, though the defendants have

separate and distinct rights, a demurrer will not hold. (Mitford's Plead. 239, 241; Turner v. Stone, 3 Ala. Rep. 485; Kennedy v. Kennedy, 2 ib. 609; P. & M. Bank v. Walker, 7 ib. 949.)

4. If a bill charge combination, it cannot be considered as multifarious on demurrer. (Mitford's Plead. 239; Bryant v. Peters, 3 Ala. Rep. 161; Moore v. Armstrong, 9 Porter, 700.)

E. W. PECK, for the appellees, declined to argue the point that the bill was defective on account of having a remedy at law, but conceded the allegations of the bill conferred jurisdiction on the equity court.

But insisted the defect of multifariousness was apparent on the most casual inspection. Williams and Wyatt have no connexion whatever with McKee, Gooden and Brown. Their acts, with respect to the different slaves, have no connexion, and if a demurrer will not lie in a case like this, a *feme covert*, with a separate estate, may join as many defendants as she has distinct articles of property.

GOLDTHWAITE, J.—In our judgment, this bill is multifarious. By a reference to the statement of the cause, it will be seen that the complaint is of three distinct and several wrongful acts, in regard to the slaves sought to be recovered. The defendants Williams and Mecham, the son, are charged as the active agents in the abduction of the slaves, Young, Dick and Ann, with which Wyatt is afterwards connected by receiving the possession of the slaves. They thus constitute the first class of wrong doers. The second consists of Gooden, McKee, Meacham the son, Wheaton, and Brown, who in this connexion are charged only with regard to the slave George; and the last class includes only Mecham, the husband, charged as the active agent in the abduction of the slave Spencer, and Williams who controls the possession. There is then no act charged in which all these individuals have participated in committing a wrong upon the equitable estate of the complainant, nor do they derive a title, or are they shown to claim through a common source, affected with the complainant's equities. The only matter in the case common to all, is that the complainant asserts a

paramount equitable right against each of them.　Is this suf-
ficient to enable her to grasp them as defendants in the same
bill; when the only connexion is the general charge of combination?

It is said by Lord Redesdale that a demurrer to a bill for
multifariousness, must so far answer it as to deny the combination.　[Mitford, 240.]　This rule is denied in modern prac-
tice in the English Chancery.　[Berkes v. Whitworth, 1 Madd.
57; Cooper's Plead. 183.]　The modern practice is entirely
consonant with the reason of the thing, as a demurrer for this
cause, if sustained, must produce the same effect, without the
denial as with it, inasmuch as the cause would not be re-
tained on the charge of combination alone.　We may then
lay out of view the general charge, as not in any way affect-
ing the question.

None of the cases referred to by the counsel, from our own
Reports, sustain the position of the complainant.　That of
Cummings v. McCullough, 5 Ala. Rep. 324, is supposed to
extend as far as any other.　In that case the allegation of the
bill was that Clare was the purchaser of certain real estate
from Cummings, and that the note sued for was in Cooper's
hands.　The general object of the bill was to obtain the de-
claration that a deed of trust executed by Cummings to Coop-
er, of all his property, choses in action, &c., was fraudulent
and void.　The assignment being general, it could not be
known until the answer and hearing how far Clare was con-
nected with the deed of trust, as that might cover his notes
as well as others.　Hence the propriety of making him a par-
ty, and if such had been the fact, the deed of trust was the
bond of union between all the defendants.

A reference to a few decided questions will perhaps suffice
to show, there must be some other connection between the
defendants to a bill, than their several interference with the
complainant's equitable rights.　Thus it has been held that
when one whose copy right is infringed cannot maintain a
joint bill against several book-sellers, each taking copies of
the spurious edition for sale.　[Dilly v. Doig, 2 Vesey, Jr.
487.]　Then the Chancellor said, if the defendant against
whom the injunction was allowed had transferred the books
to another, it would be permitted to follow the subsequent

wrong doers. In answer to the argument that the bill was founded on and to establish a general right, he said these cases were allowed when the general right was liable to invasion by all the world, as a bill to establish the custom of a mill, &c. In Harrison v. Hogg, 2 Vesey, Jr. 323, a bill was held demurrable because the plaintiffs were not jointly interested in the object of the suit in all respects, or in other words joint and several demands were joined. The objection was illustrated by the condition of the case, if one of the parties should die. In Gaines v. Chew, 2 Howard, 619, all the defendants claimed through the will, which it was the object of the bill to set aside, and that was the common ligament of the suit. It is conceded even there, that a bill like this would be multifarious. In connection with the same subject, we refer also to Marriott v. Givens, 8 Ala. Rep. 694; and Colburn v. Broughton, at this term.

We have only to add, that the case before us does not seem distinguishable in any important respect from Dilly v. Doig, before cited, and which seems admitted in all the subsequent cases.

Decree affirmed.