# Bishop *et al. v.* Wood *et al.*

## *Bill of Review.*

1. *When an injunction will be dissolved.*—The general rule of practice is that on the filing of an answer, an injunction may be dissolved on motion, if the equity of the bill is fully and completely denied; and whether the allegations of the bill be denied or not, an injunction may be dissolved, if the bill be wanting in equity.

2. *The right of amendment must be claimed.*—The right of amendment is secured by the statutes, but it is a right which must be claimed by the party entitled to it; and when there is an opportunity of claiming it, the chancellor errs only by a denial of it.

3. *It is error to dismiss a bill in vacation, when the complainant has not had an opportunity to amend the bill.*—When the demurrer to the bill, or a motion to dismiss it for want of equity, has not been heard; and the equity of the bill is drawn in question only incidentally, and the decree is rendered in vacation,—an absolute dismissal of the bill without affording the complainant an opportunity of amendment, is erroneous.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. HURIOSCO AUSTILL.

On the 10th day of May, 1871, Eliza Wood, a married woman, filed a bill of complaint by her next friend, in the Chancery Court of Butler county, against her husband, George W. Wood, Joseph Beasley, Stephen Bishop, and Matthew Bishop. The bill alleged that her husband, George W. Wood, purchased, many years ago, a certain tract or parcel of land, took the title to said land in his own name, and paid the purchase-money for it with money belonging to her statutory separate estate. Recently Wood had sold the same land to Stephen and Matthew Bishop, appellants in this case. The price agreed upon for the land was thirty-seven hundred dollars, one-half of which sum was paid, and the remainder became due at some time in the future.

The bill also averred that one Beasley had sued her husband, the said Wood, in the Circuit Court of Butler county, to recover the amount due on a promissory note, and had garnished the said Bishops, purchasers of the land as aforesaid; and that the said "garnishment suit was then pending." The garnishees had answered the garnishment and had admitted an indebtedness to said George W. Wood of eighteen hundred and fifty dollars, payable in cotton at twenty cents per pound.    The bill alleged that the note made by the said Stephen Bishop and Matthew Bishop, and given to the said George W. Wood for the balance of the purchase-money of the said land was in equity and justice a part of her statutory separate estate, and not liable for the debts of her husband, George W. Wood.    The said bill concluded with a prayer for a writ of injunction against the said Beasley, restraining him from the prosecution of the said garnishment suit; that the note made by said Stephen and Matthew Bishop, and payable to said Wood, be decreed to be a part of her separate estate; that if it be necessary that all the deeds to said land, and the said promissory note "be corrected and reformed in accordance with the facts of the case," and for general relief.

Joseph Beasley, in his answer, denied the equity of the complainant's bill; and Stephen Bishop and Matthew Bishop admitted their indebtedness to the said George W. Wood, but alleged a payment or set-off of two hundred dollars, which ought to be credited on the said promissory note, and prayed for the protection of the court, and that their answer might "be considered and taken in the nature of a bill of interpleader, and that said Eliza Wood and said Joseph Beasley be in the Court of Chancery required to litigate their rights to said note and its proceeds."

The said George W. Wood was served with process, but filed no answer to the said bill, nor was a decree *pro confesso* taken against him.

Afterwards, during the pendency of the suits, Joseph Beasley, George W. Wood and his wife, Eliza Wood, agreed on the 26th day of February, 1873, to settle the matters in controversy between them.    By the agreement it was stipulated that said Beasley should recover a judgment against Stephen Bishop and Matthew Bishop, the garnishees of Wood, for the sum of four hundred and fifty dollars; and "all other suits to be dismissed, each party paying his or her own costs."

On the 16th day of October, 1873, a decretal order was

made directing the register to "take and state an account between complainant and defendants of what amount was the value of the cotton mentioned in the note made an exhibit to complainant's bill at the maturity of the same,—deducting therefrom the sum of four hundred and fifty dollars with interest thereon from the 21st day of May, 1873."

On the 17th day of October, 1873, the register reported, not the value of the cotton, but the amount of principal and interest due on the promissory note in money, after deducting therefrom four hundred and fifty dollars and interest thereon.

On the same day a final "decree was rendered by consent of all the parties in open court," that Eliza Wood, the complainant, should recover of said Stephen Bishop and Matthew Bishop the sum of eighteen hundred and sixty-two 16-100 dollars, together with the costs of suit.

A bill of review was filed by the said Stephen Bishop and Matthew Bishop, setting forth the foregoing facts, and alleging that "on the day the report of the register was read to the court, the same was confirmed by the consent of A. J. Perdue, as solicitor of the complainant; and a final decree rendered in favor of said Eliza Wood, vesting in her the right and title to the note made by complainants for said land, and decreeing that she recover from them the sum of eighteen hundred and sixty-two 16-100 dollars, together with costs—and the decree also recited that it was rendered by consent of all the parties in open court."

And the said complainants "aver that they did not employ or authorize any person for them to employ the said A. J. Perdue as their solicitor or attorney in said cause, or in any other cause. That his appearance for them in the Chancery Court was wholly unauthorized by them, or either of them, either directly or indirectly, and the consent of said Perdue for them, to said decree and reference, the confirmation of the register's report, and the rendition of the said final decree, was given without their, or either of their, knowledge or consent thereto; nor have they, or either of them, in any manner, since, ratified the same; and that neither of them had any knowledge of such appearance and consent made for them by said Perdue until recently."

The complainants alleged, also, "that they were greatly wronged and injured by the proceedings in which said Perdue consented for them without authority, in this: that the bill of said Eliza Wood, to which complainants were made parties, nowhere claimed or prayed for any relief or decree against them, but only against George W. Wood and Joseph Beasley,

[Bishop v. Wood.]

yet the final decree is against them for money and costs, and is not in accordance with the allegations or prayer of said bill."

The complainants also averred that a credit of two hundred dollars, paid by them on the promissory note given to the said Wood, was not allowed on the reference by the register; that the report of the register did not conform to the order of reference, and that they were wrongfully taxed with costs of suit.

The bill prayed that it might be considered in the nature of a bill of review; and that "upon the hearing the orders and decrees and report of the register, made and entered at the October term, 1873, of this court in said cause of Eliza Wood against George W. Wood, Joseph Beasley and the complainants, might be reviewed, reversed and vacated, and the complainants restored to the position they occupied in relation to said bill before said orders and decrees were made. The bill prayed also for an "order suspending further proceedings on and under said final decree in said cause, and superseding the execution which has been issued thereon until the further orders of this court."

The chancellor allowed the bill of review to be filed, and granted an order suspending all further proceedings on the execution in the hands of the sheriff in favor of said Eliza Wood.

At the April term, 1875, of the court, "the cause was submitted, on motion by defendants, to dissolve the injunction; which motion it was agreed the chancellor might decide in vacation, within ninety days."

The court, on consideration, dissolved the injunction and dismissed the bill for want of equity.

HERBERT & BUELL, for appellants.—1. A judgment resting on an unauthorized appearance of an attorney may be set aside in equity.—Freeman on Judg. § 499, and authorities cited.

2. A decree *pro confesso* against appellant, on the bill of Eliza Wood, would not have supported the decree against them. The note was not described in the bill, nor does it show when it became due. It prays no relief whatever against appellants; nor do the allegations authorize a decree against them. The decree against them can not be reconciled with the primary rule of chancery pleading, that the *allegata* and *probata* must correspond.—1 Brick. Dig. 743, § 1538. Nor can complainant have relief for matters not alleged in his bill.—1 Brick. Dig. 743, § 1538. Nor can relief be

[Bishop v. Wood.]

granted under the general prayer, which is distinct from and independent of that general prayer.—1 Brick. Dig. p. 104, § 938.

3. To affect a dissolution of the injunction, the answer must deny every material allegation of the bill. But nearly every material allegation is admitted, directly or indirectly, by the respondents. The court has refused relief, and we asked that the decree be reversed, for the errors assigned; and at least that the bill be dismissed without prejudice.

GAMBLE & BOLLING, for appellees.—1. The injunction in this case ought to have been dissolved. An inspection of the record will show that every material allegation of the bill in which its equity rests was denied, and when this is the case, an injunction should be dissolved.—1 Brick. Dig. p. 677, § 548.

2. The court will, on motion, dissolve an injunction and dismiss the bill, if it is wanting in equity.—1 Brick. Dig. p. 677, § 546, et. seq.

3. The appellees deny the allegation that A. J. Perdue appeared for the appellants without their authority. And they can not deny the authority of an attorney who represents them.—5 Dana, 11; 7 Allen, 54; 2 Am. Lead. Cases, 633, 636, 637.

4. It is insisted that the register should have ascertained how many pounds of cotton, at twenty cents per pound, it would have taken to discharge the notes and interest, and then have found the value of the cotton at the time of the maturity of the note. This is clearly illegal. The note promised to pay George W. Wood eighteen hundred and fifty dollars, or its equivalent in cotton properly packed. This is only a stipulation in the note for the benefit of the appellants, and to avail themselves of it, they must show they delivered the cotton at the time the note matured.—1 Brick. Dig. p. 255, § 35, and authorities cited.

BRICKELL, C. J.—The bill is filed to review and reverse a decree rendered upon a former bill, for errors alleged to be apparent on its face, and also to impeach and set it aside for fraud. On presentation of the bill, the chancellor directed a suspension of the proceedings on the decree, until the further order of the court, on the complainants executing bond with surety in conformity to the statute.—Code of 1876, § 3842. The bond having been executed, answers were filed by the material defendants, who submitted a motion

[Bishop v. Wood.]

to dissolve the injunction, (by which we suppose was intended the vacation of the order of suspension,) on two grounds, viz: that the bill was without equity, and that its material allegations were fully denied by the answers. The motion was sustained, and the bill dismissed for want of equity. In the answer of the defendant having the real interest in the matters of controversy, a demurrer is incorporated assigning several distinct causes.

The general rule of practice under our statute, or rather of which the statute is declaratory, is that on the coming in of the answer, on motion, an injunction may be dissolved, if the equity of the bill is fully and completely denied; or whether there is, or not, a denial of the allegations of the bill, if it is wanting in equity, the injunction may be dissolved. Whether this rule is of any application to a restraining order entered by the chancellor on a bill of review, we do not propose now to decide. The rule of practice of force when the chancellor rendered the decree dismissing the bill, in effect prohibited a defendant, who had interposed a demurrer assailing the equity of the bill, from moving to dismiss until the cause was ready for final hearing.—Rule 71, R. C. p. 833; *Calhoun v. Powell*, 42 Ala. 645. The rule was intended and deemed probably as a sequence of another rule, requiring all demurrers whether incorporated in, or separate from the answer, to be disposed of on calling the cause, without awaiting a readiness for a hearing on the proofs. From the demurrer in an early stage of the cause, the defendant could obtain all the benefits of a motion to dismiss, and if the grounds on which it rests, could be obviated by amendment, the complainant would be apprised of its necessity, and a hearing on the merits expedited. The chancellor should not have dismissed the bill for want of equity. The dismissal was in vacation, without affording the complainants the opportunity of amendment. If there had been a hearing on demurrer, or on a direct motion to dismiss for want of equity, it would not have been the duty of the chancellor, on sustaining the one, or the other, to have retained the cause, and tendered the complainants the liberty of amendment. The right of amendment is secured by the statutes, but it is a right which must be claimed by the party entitled to it, and the chancellor when there is opportunity of claiming it, can be put in error only by a denial of it. But when there is not a hearing on demurrer to the bill, or on a motion to dismiss for want of equity, and the equity of the bill is drawn in question only incidentally, and the decree is rendered in

vacation, it is error to dismiss absolutely, without affording the complainant the opportunity of amendment.

As a bill of review strictly, we do not think the bill can be maintained. The errors complained of, are errors of judgment revisible on error or appeal, but not by bill of review. *P. & M. Bank v. Dundas*, 10 Ala. 661; *McDougald v. Dougherty*, 39 Ala. 409. Of these errors, the complainants can not complain, if as the decree recites, it was rendered by their consent. But as a bill to impeach the decree for fraud, it can, and should have been sustained. Its averments are (and they are substantially admitted by the answers), that the solicitor appearing for the complainants, and consenting to the decree, had never been retained by them, and was wholly without authority in the premises. That of his appearance and consent to the decree, they were not informed until after the close of the term, at which the decree was rendered, and that he is not of ability to respond in damages to them for the injury which may result. The principle the case involves, and on which the equity of the bill may be rested, is thus stated in *Crafts v. Dexter*, 8 Ala. 770: "When by an unauthorized act of an officer of court, a judgment is improperly rendered against one, without his knowledge or consent, he may be relieved in chancery, though the plaintiff in the judgment was not privy to the act."—See, also, *Griggs v. Gear*, 3 Gilman, 2. Without comment on the facts stated, we proceed to inquire to what extent the complainants are aggrieved by the decree. It is not enough that there has been fraud or official misconduct, injury must have resulted from it. Fraud without damage, is not a cause of action at law, or a ground of relief in equity. It is only when the two meet and concur, that courts intervene.—*Overdeer & Aughinbaugh v. Wiley, Banks & Co.*, 30 Ala. 709.

The stipulation in the note, that it could be paid or discharged in cotton at twenty cents per pound, was for the benefit of the complainants. If they sought to avail themselves of it, they were bound to show an ability and willingness to deliver the cotton at the maturity of the note, of which the payee had notice; or the note became an absolute promise for the payment of the money expressed.—1 Brick. Dig. 255, § 35. The pendency of the garnishment at law, did not relieve them from the necessity of tendering payment in cotton at the maturity of the note, if they desired to avail themselves of the stipulation. They have no ground of complaint therefor, because by the decree they are charged with the payment of the money expressed in the note. The decree

is not in that respect unjust, or in violation of law. But they have ground to complain that they were not allowed a credit for the two hundred dollars, they had paid on the note, and were charged with the payment of costs. Their relation to the former suit was that of mere stake-holders of a fund in controversy, and they were guilty of no default, or of such interference in the litigation as rendered them liable for costs. Thus far, the averments of the bill entitle the complainants to relief, and we think the chancellor erred in its dismissal.

Let the decree be reversed and the cause remanded.