# Conner and Wife *v.* Smith.

*Bill in Equity by Purchasers from Mortgagor, for Account and Redemption, against Purchaser at Mortgage Sale.*

1. *Averments of bill for account and redemption.*—Where the children of the mortgagor, claiming as subsequent purchasers from him, file a bill against the mortgagee and purchasers at a sale under the mortgage, alleging fraud and oppression practiced by the mortgagee in the matter of the accounts, and asking an account and redemption, "they must allege the true state of the account between the mortgagor and mortgagee—that is, must allege the amount claimed by the mortgagee, and the amount admitted by the mortgagor, or show the several items contested between them." General averments that the balance due, if any, was inconsiderable, and that the purchasers bought with knowledge of the true state of the account, are not sufficiently certain and definite.

2. *Variance between allegations and proof.*—Where the bill is filed by subsequent purchasers, against the mortgagee and alleged sub-purchasers claiming under him, asking an account and redemption; while the proof shows that a part of the property, though conveyed by the mortgage, was never sold under it, and that the defendant claiming that part holds under a purchase at a sale by the register foreclosing a former lien,—the variance is fatal, unless cured by amendment.

3. *Multifariousness.*—A bill which seeks an account of the mortgage debt, and a redemption of the several lots and parcels of land conveyed by it; and which shows on its face that the several sub-purchasers claim separate and distinct lots, and that one of the lots was not sold under the mortgage, but was bought by the defendant claiming it at a sale under a decree foreclosing an older lien,—is multifarious.

4. *Dismissal on demurrer, in vacation.*—When a bill is dismissed on demurrer in vacation, on account of defects which are amendable, the complainant should be allowed an opportunity to amend it; and the failure to allow him an opportunity to amend will work a reversal of the decree on error.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 17th February, 1877, by Thomas U. Conner and his wife, who was a daughter of William H. Moore, jointly with the other children of said Moore, against Elon G. Smith, Robert H. Herstein, Maurice Bernstein, and others; and sought to redeem certain real property, consisting of a block of stores in Huntsville and other parcels of land, which had been conveyed by said Moore to his

children, by deed dated September 11th, 1866, in payment of an admitted indebtedness " to a large amount," as stated in the deed. This deed, in describing and conveying the property, stated that it was " subject to debts due to Joseph C. Bradley and E. G. Smith." The debt due to said E. G. Smith was secured by a deed of trust on the property, which was dated May 10th, 1866, and by which the property was conveyed to F. P. Ward, as trustee, with power of sale if the debt was not paid on or before March 16th, 1867. The property was sold by the trustee under this deed, Smith himself becoming the purchaser; and he afterwards sold and conveyed the lots, by separate conveyances, to the several defendants. A portion of the property was also sold by the register in chancery, under a decree foreclosing the lien of the debt in favor of Bradley; and one of the defendants was in possession of that lot, claiming under a purchase at the register's sale. As the case is here presented, it is unnecessary to state in detail the facts connected with these several matters. The bill prayed an account of the mortgage debt to Smith, charging fraud and oppression on his part, and knowledge by the sub-purchasers from him of the true state of the account; and sought to redeem on payment of the balance due, if any.

The case was before this court at its special November term, 1880, on appeal from the chancellor's decree overruling a demurrer to the original bill; when the chancellor's decree was reversed, and the cause remanded.—*Smith v. Conner and Wife*, 65 Ala. 371–77. After the remandment of the cause, the bill was amended; and the present appeal is sued out from the chancellor's decree sustaining the demurrers to the bill, original and amended, and dismissing it for want of equity. The material facts, as the case is now presented, are stated in the opinion of the court.

D. P. LEWIS, for appellants.—So far as Smith is concerned, the bill certainly contains equity. If the infants are prejudiced by any defects in the bill, the court will order it to be amended.—Story's Eq. Pl. § 892. The dismissal of the bill in vacation, without allowing the appellants an opportunity to amend, must work a reversal.—*Little v. Snedecor*, 52 Ala. 167; *Bishop v. Ward*, 59 Ala. 253; *Kingsbury v. Milner*, 69 Ala. 502.

CABANISS & WARD, and L. P. WALKER, *contra*, contended that the bill was multifarious, and was obnoxious to the other grounds of demurrer specifically assigned.

STONE, J.—This case has been heretofore in this court—65

[Conner & Wife v. Smith.]

Ala. 371. We then declared, that the demurrers of the defendants to the original bill should be sustained, unless it was amended so as to give it equity. We did not point out the assigned grounds of demurrer which should be sustained, but we specified three particulars in which the bill was defective. The cause being remanded to the court below, an amended bill was filed, in which the defects in the original bill which we had pointed out were attempted to be remedied. There was a demurrer to the amended bill, which the chancellor sustained, and dismissed the bill.

Among the grounds specified in the demurrer to the original bill, was the charge that it was multifarious. The chancellor, on the last hearing, reached the conclusion that we had pronounced the bill defective on this account. We did not expressly rule on this question, although it was probably our duty to do so. It is not embraced in the three propositions, which we asserted were fatal to the bill as then presented. We will recur to this subject further on.

In our former opinion, speaking of the original bill, we said: "There is no averment of the bill, showing the true state of account between Moore and Smith, or tending to show that Herstein and Bernstein had any knowledge or notice thereof, or that they, to any extent, participated in, or were cognizant of any fraud or oppression practiced by Smith, if any were practiced. The averments of the bill on this subject are very vague." The attempt to heal this defect in the amended bill is in the following language: "That at the time of said sale, the said purchasers [Herstein and Bernstein] had full knowledge and information, by notice from complainants, what were their rights with respect to said corner lot, and in respect to the adjoining lot, which was subsequently bought by them from said Elon G. Smith; that they had full notice of the transfer of William H. Moore to complainants, of the property in question; that the same was on valuable consideration; that the account of Elon G. Smith against William H. Moore was unjust, and destitute of all equity and fairness; that the same was nearly, if not quite discharged, and that said Smith was using the large account, without recognizing and allowing the just credits to which the same was entitled, inequitably and oppressively, and thereby placing it out of the power of the said William H. Moore, or complainants, to pay any small balance, if any were due, and depress the value of the said lots so sold. And complainants aver that said Herstein and Bernstein became the purchasers of said lot from the register, and the lot from Elon G. Smith, with a full knowledge of the facts above set forth, and at less than two-thirds of the value of said property; that they purchased what they knew to be a great

[Conner & Wife v. Smith.]

bargain, with full knowledge of the facts that made their title imperfect. And complainants aver that they believe that, at the time the said Elon G. Smith purchased the said lot in the Moore block (which he did for the sum of $3,000), the said William H. Moore owed him, if any thing, an inconsiderable sum, the precise amount of which, if any thing, complainants can not tell, and a reference will be necessary to determine the same; . . that Smith claimed a large amount of debt that was not due, and entirely fictitious; that this claim, under a sale by virtue of a power in the deed of trust, operated to oppress and overwhelm said Moore and complainants. Complainants aver that the truth is, as they believe on information, that said William H. Moore was not really indebted to said Smith in any sum, upon a proper statement of the accounts, at the date of sale under said mortgage, and that said Bernstein and Herstein purchased with all the means of knowing the true state of said account."

It can scarcely be affirmed that this meets the requirements of our former ruling. It does not show the state of accounts between Moore and Smith. It fails to show the sum claimed by Smith as due to him, fails to show the sum conceded by Moore to be due, and thus fails to show the difference, if any, which existed between them. There is a generality and indefiniteness of averment, pervading alike the original and amended bills, which fall short of the rules required in pleading. Bills, in their statements of fact, should be so clear and specific, as that defendants may be informed what is claimed, what they are required to answer, and that the court may know what decree to render, in case of demurrer, or decree *pro confesso*. *McDonald v. Mobile Life Insurance Co.*, 56 Ala. 468. The complainants in this case are the children of William H. Moore, who had the contested dealings with Smith. It would be harsh to suppose, in the absence of averment, that he, the father, was unwilling to furnish them information of the nature and extent of claims set up by Smith, and of the items disputed, and credits claimed by him, Moore. A statement of the account, thus made out, would have presented the real issue in an important phase of this cause, and would have narrowed the area of proof to the items thus controverted. It is almost useless to add, this would have greatly simplified the controversy,—the real purpose of pleading. As the pleadings now stand, we are wholly uninformed of the sum claimed by Smith to be due him, and, with the exception of one item, of the various charges which made up the account. We are equally uninformed of the items relied on by Moore, as making up the recoupments and cross demands claimed by him, of the collective or separate sums of them, and, with the exception

of the item referred to above, of the charges in Smith's account objected to by complainants. In a proceeding, such as this is, in one of its aspects, to overhaul and settle an account, which must have consisted of many items of debit and credit, both the original and amended bills are too general and indefinite in their averments.—*Danner v. Brewer*, 69 Ala. 191.

The case having gone off in the court below on the demurrers interposed by defendants to the bill as amended, we can only look to the bill and amendment, in considering the assignments of error. According, then, to the averments of the bill, William H. Moore, father of complainants, on the 10th day of May, 1866, executed a mortgage, or trust-deed, to F. P. Ward, trustee, conveying to him lots in and near the city of Huntsville, to indemnify and secure Elon G. Smith, for advances made and to be made by him to Moore, of considerable amount. The deed of trust contained a power of sale on default. The lots thus conveyed were a plat of ground, fronting 44 feet on the public square, and extending back northeast on Washington street 78 feet, on which had been erected a building containing two stores, known as the "Moore Block;" and two other lots farther east, therein described, and fronting on the Meridianville turnpike. In September, 1866, Moore, by deed of bargain and sale, and on a recited consideration of "a large sum of money," amounting to more than fourteen thousand dollars, due from him to his children, granted, bargained and sold to them, among other property, the said lots he had so conveyed to Ward in trust, mentioned above. In this deed it is recited and stipulated, that said conveyed property was "subject to the debts of said Bradley and said Smith." The bill then avers that said Ward, as trustee, on the 24th day of June, 1867, and under the power contained in said deed of trust, did "sell the said lots in the city of Huntsville, at public sale, and that said Elon G. Smith became the purchaser of the same," and received a deed therefor.

The bill then avers that one Spraggins, who had become the assignee and owner of the Bradley claim and lien, filed a bill in the Chancery Court to enforce his lien; that he recovered a decree in said cause on the 8th day of June, 1867, condemning the corner lot of said Moore Block to sale; and that the register of the court, at a time not stated, sold the said corner lot, under said decree, to Herstein and Bernstein, and made them a deed. The corner lot is the northeastern half of the block, and lies contiguous to Washington street. The amended bill avers, that the suit in favor of Spraggins was commenced in March, 1867. The complainants in this bill were not made parties to the Spraggins suit. The bill further avers that, in November, 1867, Elon G. Smith "sold and conveyed the first

named lots, known as the 'Moore Block,' to Herstein and Bernstein, for the sum of six thousand dollars." The bill further charges that, on the 16th day of December, 1872, the said Smith sold and conveyed the said lots fronting on the Meridianville turnpike to Newman and Crowder, for the sum of five hundred dollars.

It will be seen by what is stated above, taken from the original bill, and not varied in the amendment, that the case made by complainants is as follows: *First*, that Wm. H. Moore conveyed the entire property, consisting of the Moore block (two stores) and the two lots fronting on the Meridianville turnpike, to Ward, trustee, for the purpose of indemnifying and securing Smith for advances made, and to be made. *Second*, that said Wm. H. Moore afterwards conveyed the equity of redemption in said property, and the title to other property, to his children, the complainants in this suit, reciting in the conveyance that the property conveyed was subject to the debts of Bradley and Smith. *Third*, that Ward, the trustee, sold the said property conveyed to him in the trust-deed, and said Smith became the purchaser at said sale, and received a conveyance. *Fourth*, that Spraggins, administrator of the transferree of the Bradley claim, filed a bill, and obtained a decree, condemning to sale the northeast, or corner half of the Moore block; under which decree, that half the block was sold, and conveyed by the register to Herstein and Bernstein. To this suit of Spraggins the children of Moore, complainants in this suit, were not made parties. *Fifth*, that Smith sold and conveyed the Moore block to Herstein and Bernstein. The averment of the bill, properly construed, is, that Smith had purchased, at Ward's sale, the entire Moore block, and that he sold the entire Moore block to Herstein and Bernstein. *Sixth*, that Smith had sold and conveyed the two lots fronting on the Meridianville turnpike, to Newman and Crowder.

The purpose of the present bill is to redeem all the lots. *First*, the corner, or north-east half of the Moore block, on the ground that the owners of the equity of redemptien—the complainants in this suit—were not made parties to the Spraggins suit. On account of this omission, it is contended, that as to these complainants, the mortgage or lien has not been foreclosed, but still remains only a lien security. The investigation of this phase of the complaint, it would seem, would require that the Bradley or Spraggins claim should be overhauled. *Second*, the right to redeem the south-west half of the Moore block, which seeks a reinvestigation of Wm. H. Moore's indebtedness to Smith. It would seem that, in this phase of the controversy, Smith and Herstein and Bernstein are alone interested adversely to the complainants. *Third*, the right to

[Conner & Wife v. Smith.]

redeem the two lots fronting on the Meridianville turnpike. In this part of the litigation, only Smith and Crowder and Newman are interested adversely to the suit, according to the averments of the bill. There is demurrer to the bill for multifariousness.

If the averments of the bill be true, all the property in controversy passed, in the first instance, to Smith, under the sale and conveyance made by Ward, the trustee. The division took place under the sub-sales by Smith, of a part to Herstein and Bernstein, and of a part to Crowder and Newman. True, it is alleged that Herstein and Bernstein obtained another title to the north-east half of the Moore block, by their purchase at the register's sale. We need not determine whether the bill as it stands is multifarious.—1 Brick. Dig. 719 to 721, §§ 1158, 1159, 1162, 1168, 1172, 1179, 1183, 1191, 1192; *Ware v. Curry*, 67 Ala. 274; *Kingsbury v. Flowers*, 65 Ala 479.

We consider it our duty to comment on another phase of this case, because it will become important in the further prosecution of the suit. The deed of Ward, trustee, when he sold under the trust-deed, made to Smith, the purchaser, and the subsequent deed of Smith to Herstein and Bernstein, both purport to be set out as exhibits to the answers of some of the defendants. If they be true copies, and we suppose they are, then Ward never did sell the north-east half, or corner lot of the Moore block; Smith never purchased it, and did not convey it to Herstein and Bernstein. The only title or claim asserted by the latter, to that north-east half of the block, is the sale and deed made by the register to them. This, as the bill now stands, produces such a variance between the allegations and what will be the proof, as to render an amendment and correction of the bill necessary. When amended, so as to correspond with the facts, it will present a clear case of multifariousness, in that it unites distinct subjects-matter, having no connection whatever.—*McIntosh v. Alexander*, 16 Ala. 87; *Mecham v. Williams*, 9 Ala. 842; *Waller v. Taylor*, 42 Ala. 297; *Clay v. Gurley*, 62 Ala. 14; *Johnson v. Parkinson, Ib.* 456; *Lehman v. Meyer*, 67 Ala. 396.

In sustaining the demurrer and dismissing the bill in vacation, without allowing to complainants an opportunity to amend, the chancellor erred.—*Bishop v. Ward*, 59 Ala. 253; *Kingsbury v. Milner*, 69 Ala. 502; *Stoudenmire v. DeBardelaben*, 72 Ala. 300; *Shackelford v. Bankhead*, 72 Ala. 476.

Reversed and remanded.

Brickell, C. J., not sitting.