# The Security Loan Association *v*. Lake.

*Bill by Mortgagor to Enjoin Sale under Power, for an Account, and to Redeem.*

1. *Bill to redeem ; what is a sufficient offer to do equity.*—An averment in a bill, filed by a mortgagor, to redeem real estate conveyed by a mortgage, executed to secure a loan made under the by-laws of a corporation organized, as a building and loan association, under the general law, that "orator is still willing, and now offers to pay said association whatever amount he may be justly chargeable with, if any, upon the application to his said case of the terms" of the by-laws under which the loan was made, "and in this respect submits himself to the order and decree of this Hon. Court," is a sufficient offer to do equity to entitle complainant to relief, if his bill is otherwise sufficient, although no tender is averred, and the money is not brought into court.

2. *Building and loan association ; what by-laws valid.*—By-laws adopted by a corporation organized as a building and loan association, under Art. 7, Chap. 1, Title 2, Part 2, of the Code of 1876, providing that loans of the money in the treasury shall, at stated times, at meetings of its members, be sold at public outcry to the highest bidder ; that the premium bid shall not be less than $1.00 per share per month ; that the shareholder bidding the highest premium shall be entitled to receive as a loan the full amount of $200.00 per share for each share held by him ; that the borrower shall pay interest on such loan at the rate of six per cent. per annum, payable monthly, and also the premium at which he bid in such loan, such premium also payable monthly,—are authorized by the statute under which the association was incorporated.

3. *Same ; premiums on loans not usury.*—When the legislature authorized corporations incorporated under the general law, as building and loan associations, to sell loans of its funds to the shareholders at the highest bid, that body thereby authorized such corporations to demand and recover whatever premium the purchaser bound himself to pay ; and the transaction, being thus legalized, is taken out of the operation of the statutes against usury.

4. *Same ; how member can withdraw and have loan cancelled.*—A by-law of such corporation, providing, that a shareholder, who has obtained a loan, may withdraw from the association and have his loan cancelled, by payment to the association of the amount of the loan, less the amount of money which he has paid in as monthly installments on the stock held by him, reserves to the shareholder a privilege which he may exercise or not, at his pleasure. If he elect to exercise it, he must comply with the terms thereby prescribed, which were voluntarily assumed by him, when he obtained the loan. Under this by-law, the shareholder is entitled to have his loan credited with the money which he has paid in as monthly installments on his stock, but not with money which he has paid for and on account of the premiums at which he bid in his loan.

5. *Usury ; how pleaded.*—A party who has made usurious payments on a debt and seeks, by bill in equity, to obtain credit for such payments, must distinctly and correctly set forth in the bill the terms and nature of the usurious agreement and the amounts of the payments which he has made thereon. Under this rule, the averments of the bill in this cause are wholly insufficient to raise the question of usury.

6. *Bill to enjoin sale under power ; when without equity.*—A bill filed

VOL. LXIX.

by a mortgagor, seeking an account of the amount due on the mortgage debt, and an injunction of a sale of the property conveyed by the mortgage, under a power therein contained, is without equity, when it does not show, that the mortgagee claimed more. than was due on the debt; or that the accounts are so complicated, that the parties can not state them and ascertain the amount due; or that the mortgagee is making, or attempting to make, a fraudulent, or oppressive use of the mortgage, or of the power of sale contained therein.

APPEAL from Mobile Chancery Court.

Heard before Hon. JOHN A. FOSTER.

The bill in this cause was filed by Thomas H. Lake against The Security Loan Association, a corporation, and Leslie E. Brooks; and the case made thereby is substantially as follows: The defendant corporation was organized in 1873, under the Code, as a building and loan association, the capital stock of which was divided into shares of $100 each. In April, 1876, the complainant, Lake, being the owner of twenty-five shares of the stock of said corporation, upon which nothing was then due, applied for and obtained a loan or advance of $5,000, which was made to him by the association "under the terms, conditions and requirements and reservations of its charter, constitution and by-laws governing loans to the holders of stock in said association," and at a premium of one dollar per month per share, in addition to interest at the rate of six per cent. per annum, both payable monthly. Copies of the constitution and by-laws of the corporation are made exhibits to the bill, and the provisions thereof touching the questions passed on by the court, are, substantially as follows: By the constitution it is provided, that each stockholder, for each share of stock held by him, shall be entitled to a loan of $200, and no more, upon such terms and under such regulations as may be prescribed by the by-laws. In the by-laws it is provided, that "the amount of money in the treasury each month shall, at the monthly meetings of the members, be sold at public outcry to the highest bidder or bidders. The bids shall be at the rate of not less than one dollar per month per share, and the stockholder who shall bid the highest premium over and above the said minimum of one dollar per share per month, shall be entitled to receive as a loan, the full amount of two hundred dollars per share, for each share held by him, without deduction." And further, that such loan shall be secured by mortgage on real estate, or such other security as the board of directors may deem sufficient; that the borrower shall keep the improvements on the mortgaged premises insured at his own expense, for the benefit of the association, and shall pay the taxes thereon; that he shall pay interest on the loan obtained by him at the rate of six per cent. per annum, payable monthly, in addition to the premium at which he bid in the loan, which is also payable monthly, and the monthly in-

[The Security Loan Association v. Lake.]

stallments on his stock; and that if default be made in the payment of monthly installments, interest or premiums for ninety days, the whole loan shall become due and payable, and the association may compel payment thereof by the sale of the mortgaged property. It is also provided in the by-laws, that each member, for every share of stock held by him, shall pay an initiation fee of one dollar, and thereafter monthly an installment of one dollar, until the installments, interest and premiums on loans and other receipts shall be sufficient to divide among the shares the sum of two hundred dollars per share: "*Provided,* that not more than one hundred dollars shall be required to be paid as installments upon each share of stock;" and that when such receipts have accumulated a sum sufficient for the purpose, each shareholder, who has received a loan, shall upon the surrender to the association of one share of stock for each two hundred dollars borrowed by him, be entitled to have his mortgage cancelled, or returned to him; and any shareholder, upon the surrender to the association of stock upon which no loan exists, shall for each share so surrendered, receive the sum of two hundred dollars. The by-laws further provide, that any member who, having received a loan, desires to withdraw from the association, may have such loan cancelled, by payment to the association of the amount of the loan, less the full amount of money which shall have been been paid in as monthly installments on stock by such stockholder exclusive of the initiation fee.—(Sec. 4, Art. 2.)

The complainant, to secure the loan or advance obtained by him, executed to Leslie E. Brooks, trustee, a mortgage or deed of trust on certain real estate in Mobile, a copy of which is made an exhibit to the bill. The mortgage contains a power of sale, on default in the payment of any part of any one of the monthly stock installments, interest or premiums, as they fall due; and its terms are in strict conformity with the provisions of the constitution and by-laws of the association. The bill avers, that the complainant regularly paid this sum of $25, the monthly installments on his shares of stock, and the additional sum of $50 monthly, as interest and premiums on his said loan, up to the 5th October, 1881, at which time the payments he had made upon his shares of stock, amounted to $100 per share, and in the aggregate to $2500; that the payments were all made monthly in advance of the accrual of interest upon said loan, and that thereby the interest and an additonal six per cent. on the loan, were paid up to the 10th November, 1881; that no payments were made by him to the association after the 5th October, 1881; and that he has paid all insurance and taxes on the mortgaged premises; that he has caused careful calculation to be made of the amount due from him on the loan, after cred-

iting thereon "the payments heretofore made by him as here-- inbefore stated, and the amount due thereon, on 10th November, 1881, was $399.06; that he has applied to withdraw from said association and to have his said loan cancelled, under the by-laws thereof, and for this purpose has offered to said association his fully paid up stock of the value of $2500, and to pay the difference between that value and the amount due on his said loan; and that not being disposed to be close or illiberal in his settlement, he has offered $500 in payment of said difference, a sum in excess thereof, if the said payments made by him monthly were applied monthly, as they were made, to the said loan; that "he is still willing and now offers to pay said association whatever amount he may be justly chargeable with, if any, upon the application to his said case of the terms of said by-law, Section 4, Article 2, and in this respect submits himself to the order and decree of this Hon. Court;" that said association has refused his said application, and that it required that he pay it the sum of $1,000, "with cost, interest and expenses," in addition to the surrender of his stock, which demand, the bill charges, is inequitable and unjust. It is also averred in the bill, that the trustee has advertised the property conveyed by the mortgage, for sale under the power therein contained, and that he would sell the same thereunder, unless he be enjoined therefrom. The prayer of the bill is for an account of the amount due on the loan, and of the amount which the complainant would have to pay, upon the surrender of his stock, in order that he may withdraw from said association under the by-laws thereof, and for general relief; and also, that the sale of the mortgaged premises be enjoined, until the court, by its decree, has ascertained the amount which the complainant should pay on said loan. The injunction was issued in accordance with the prayer of the bill. The defendants separately demurred to the bill, and the defendant corporation also answered under oath, and moved to dissolve the injunction upon the demurrer and answer, and also for want of equity, and also moved to dismiss the bill for want of equity. The cause was submitted for decree on the motion to dissolve the injunction, on the motion to dismiss for want of equity, and also upon the demurrer. Upon the hearing the Chancery Court rendered a decree overruling both motions and also the demurrer; and this decree is here assigned as error.

H. PILLANS, for appellant.

P. HAMILTON and COBBS & TOMPKINS, *contra*.

STONE, J.—The bill in this case was filed by Lake, the

mortgagor, to redeem real estate from under a mortgage, executed in 1876. The mortgagor is in possession, and a difference has arisen between him and the mortgagee, as to the amount due on the mortgage. The mortgagor avers that the sum due is only about four hundred dollars, but that he offered to pay five hundred dollars, which was refused by the mortgagee. The mortgage creates a trustee, and contains a power of sale, under which the property has been advertised, and will be sold, unless restrained by injunction. An injunction was obtained.

The bill prays for an account, and that complainant be permitted to redeem. It does not aver a tender, and does not bring the money into court. It contains this clause: "Your orator is still willing, and now offers to pay said association whatever amount he may be justly chargeable with, if any, upon the application to his said case of the terms of said by-law, section 4, article 2, and in this respect submits himself to the order and decree of this Honorable Court." This is a sufficient offer to do equity to entitle the complainant to relief, if his bill is otherwise sufficient.—*Rogers v. Torbut*, 58 Ala. 523.

The defendant is a private corporation, chartered under Article 7, Chapter 1, Title 2, Part 2, commencing with section 1937 of the Code of 1876. It is what, in the Code and in common parlance, is called a building and loan association, having some features of a mutual aid enterprise.

The answer denies the averment that the sum of four hundred dollars is all that is due on the mortgage, and avers that near eleven hundred dollars is due; sets up that to settle the controversy, it had proposed to accept one thousand dollars in full discharge of the mortgage debt, and that Lake had refused to pay it. So the chief contention is, as to the amount due from Lake to the corporation.

The ground on which the bill claims the right to redeem, on the basis of four hundred dollars due, is, that under the terms of the contract evidencing the loan, the complainant, borrower, bound himself to pay as interest for the forbearance of the moneys, at the rate of six per cent. *per annum*, payable in monthly installments, or, one-half of one per cent. a month, and that he was to pay no higher rate of interest; and the bill then avers that Lake, the borrower, had in fact paid an additional half per cent. every month since the loan, being twenty-five dollars additional paid every month for a period of nearly five years. These several additional payments the bill claims should be entered as credits on the principal of the loan, at the times they were severally made; and in this way, it is contended that the mortgage debt was reduced to four hundred dollars when the bill was filed. The claim and argument rest on the following postulates: That the sum borrowed was five thousand dol-

lars, and Lake has, all the while, made monthly payments of fifty dollars each, which paid the accruing interest of one-half of one per cent., equal to six per cent. *per annum*, the agreed interest, and left a surplus to be applied to the reduction of the principal, which would, and did, increase monthly, as these several payments reduced the interest-bearing debt. Then claiming a reduction of twenty-five hundred dollars, the cost and value of complainant's twenty-five shares of paid up stock, the conclusion is claimed, that only four hundred dollars is required to perfect the redemption; and all this is claimed under the terms of the contract, by which the loan was obtained. If this be true, then complainant, with the exception of the loss of interest on the stock installments or calls, will have had the use of the money borrowed at the low rate of six per cent. interest. Is this the true construction of the contract?

Corporations such as the present one are of somewhat modern origin. Their purpose is not banking, neither are they manufacturing or trading corporations. They have some elements of mutual aid, and if properly organized, and prudently and faithfully conducted, they furnish a safe and profitable depository for surplus earnings; notably, for small surplus earnings. Under their workings, many small sums, contributed by the many shareholders, are brought together monthly, and an aggregate sum is thus gathered in, which, passing out immediately to one or more shareholders, furnishes a capital, or stock in trade, sufficient for permanent and profitable investment. Each month this process is repeated, furnishing capital, or stock in trade, for other shareholders. Thus the working is continued from month to month, until a sufficient sum is collected and disbursed to pay off and cancel all the shares of stock, at the value fixed in the articles of incorporation. The lettings of the moneys are frequently called loans, but they are not strictly loans. The principal is never to be repaid as principal. In truth, it is never to be repaid at all. It is an advance payment by the corporation of the agreed value, the shares owned by the bidder are to represent, and have, at the final completion of the enterprise and the dissolution of the corporation. It is the policy of the association that the funds received on stock calls should not remain idle, and hence they are employed in advance liquidation of the demands the shareholders are severally to have at the dissolution. In anticipating payments of shares, the payments are at the rate of two hundred dollars per share. But all payments can not be made at the same time. Hence the competition. Hence the sale to the highest bidder.—Code of 1876, § 1943, subd. 6. Those who obtain the first advance, first realize the increased value of their shares, and so on, until the enterprize runs its course and winds itself up. Sharehold-

ers pay for their shares, in stock calls, one hundred dollars per share, in installments of one per cent. a month, running through one hundred months, equal to eight years and four months. Discounting interest from the deferred payments, we have an average of four years and two months in interest saved. This would reduce the cash cost of the shares to less than seventy-three dollars. Now, if those who receive the early advance payment of their shares, like the shareholders who are not paid in advance, are required to pay only the stock calls, it will be readily seen how inequitably such method of payment would work. Hence it is, that those receiving payment in advance of others, are required to pay for this privilege whatever premium they bid and bind themselves to pay. All such payments go to augment the fund for the payment of other shareholders, and accelerate final completion of the purposes of the corporation—its final liquidation and dissolution.

The mortgage executed by Lake and wife, made an exhibit to the bill, characterizes the transaction we are considering as a permanent loan. How permanent, if it was to be repaid? It makes no provision for its repayment. The defeasance in the mortgage is expressed in the following language: "If the said Thomas H. Lake, his heirs, executors and administrators shall pay or cause to be paid unto the said Security Loan Association monthly, at the time prescribed in the by-laws of said association, the sum of twenty-five dollars installment on said stock on which said loan was obtained, and the further sum of fifty dollars monthly on the same day, as interest and premium on said loan; and shall regularly continue to make such monthly payments, until all the receipts of said association shall amount to a sum sufficient to divide among the shares the amount of two hundred dollars per share, . . . . then these presents shall be void." It is nowhere shown that the terms of the mortgage are in any respect different from the terms of the contract by which Lake purchased the advance on his stock. The terms are in strict conformity with the constitution and by-laws of the association, as made an exhibit to the bill; and the terms and provisions of the constitution and by-laws on this subject are fully authorized by the statute.—Code of 1876, § 1943, subd. 6; *Montgomery Mutual Building and Loan Association v. Robinson, ante,* p. 413; *Merrill v. McIntire,* 13 Gray, 157.

If it was intended in this bill to raise the question of usury in the alleged loan, the averments are wholly insufficient for that purpose.—*Munter v. Linn,* 61 Ala. 492; *Vaughan v. Marable,* 64 Ala. 60; *Brown v. Heard,* 3 A. K. Marsh. 390; *N. O. Gaslight Co. v. Dudley,* 8 Paige, 452; *Curtis v. Masten,* 11 Paige, 15; *Waterman v. Curtis,* 26 Conn. 241. Nor do we

[The Security Loan Association v. Lake.]

think the facts justify a charge of usury when considered in reference to the statute.

In *Montgomery Mutual Building and Loan Association v. Robinson, supra,* we considered and construed language in a special act of incorporation, not distinguishable in substance from that found in the general law under which this association was incorporated, and we then held that although the premium bid and promised was in excess of the legal rate of interest, it was nevertheless recoverable. The legislature had declared what was usury and its consequences, and when that body authorized such associations to sell loans of its funds to the shareholders at the highest bid, they thereby authorized them to demand and recover whatever premium the purchaser bound himself to pay, and thus legalized the transaction. That which the legislature authorizes to be done, can not be a violation of the law. The statute in question in effect declared that such transactions were taken out of the operation of the statutes against usury.

The by-laws of the Security Loan Association recognize several methods by which shareholders can cease to be such; some relating to shareholders who have purchased an advance or loan, and others to such as have not. Article 2, section 5 of the by-laws declares the rules to be observed, when a member of the association dies. Article 2, section 3 declares in what manner members may withdraw, who are not indebted, and who have not taken a loan. Article 4, section 3, declares when stock is forfeited for non-payment of dues and fines. Article 5, section 3, relates to the transfer of stock. None of these provisions bear on the question before us, for Lake, the complainant in this case, purchased a loan or advance on his stock; and the question is, on what terms can he obtain a release of the mortgage security he gave when he obtained the money.

When the shareholder has purchased a loan on his shares, or anticipated their enjoyment, the by-laws furnish two modes, and only two, by which he can release himself and his property from the liability and encumbrance he incurs when he takes the loan. The first, found in article 2, section 4, prescribes what he shall do when he " desires to withdraw from the association." When this mode is pursued and carried out, he ceases to be a shareholder, ceases to be a member of the association, and no longer owns any interest in, or rests under any liability to the corporation. This he accomplished " by payment to the association of the amount of the loan, less the full amount of money which shall have been paid in as monthly installments on stock by such stockholder." It would seem that there should not be much difficulty in interpreting this language. The stockholder must pay back the amount of the loan; not in full,

he is entitled to a credit or discount. The by-law declares of what that credit or discount shall consist. It is "the full amount of money which shall have been paid in monthly installments on stock." The constitution and by-laws clearly show what is meant by monthly installments on stock. It is the payment of one dollar per month on each share of stock subscribed for one hundred months. It extends no farther, for nothing else paid can come under the denomination of monthly installments on stock. It can not include premiums bid, for they are always called premiums, and never called installments. They are paid monthly, it is true, and at the same time the installments are paid, but the provision for their payment is in the following language: "To be paid unto the said Security Loan Association monthly, at the time prescribed in the by-laws of the association, the sum of twenty-five dollars installments on said stock on which said loan was obtained, and the further sum of fifty dollars monthly on the same day, as interest and premium on said loan." It is just as compatible with the mortgage to call monthly payments of interest installments, as it would be to so characterize the monthly payment of the premium, at which Mr. Lake became the purchaser. So the monthly calls on stock subscribed are called installments in the constitution, article 4, and in the by-laws, article 2, sections 1, 2, 3, 4, 6; article 3, section 7; article 4, sections 2 and 3. The interest and premium are called interest and premium whenever mentioned.

This section of the by-laws construed, and necessarily construed as stated above, imposes what seem to be onerous terms on the shareholder who wishes to withdraw from the association. Particularly so, when he seeks to withdraw, after paying many installments on his stock, and, as in this case, after he has made many monthly payments of interest and premium. But the right to withdraw is a privilege reserved, not a duty imposed. He may exercise it or not at his pleasure. If he elect to exercise it, he must comply with the terms prescribed in the by-laws and voluntarily assumed when he executed the mortgage. As we have said above, the legislature has relieved this transaction from the imputation of usury, in the matter of premium promised in the purchase of the advance or loan.

The other mode by which a borrower or purchaser of an advance can release himself and property from liability therefor, is prescribed in article 5 of the by-laws. It is by procuring a substitute to take his place, and making good the difference in the premium the money may command on second sale. When this course is pursued, the shareholder remains a member of the association, unless he sells his stock. It is not contended

this case falls within this provision, and we do not consider its terms. They appear to be plain and simple.

Under the principles stated above, the complainant fails to show that the mortgagee claimed more than was due to it. There is not enough in the bill to show that the accounts are so complicated, that the parties can not state them and ascertain the amount due. And there is a failure to show that the mortgagee is making or attempting to make a fraudulent or oppressive use of the mortgage, or of the power of sale contained therein. In such case, does the bill contain equity? And if so, is there any reason shown why the injunction should have been granted?

Jones, in his excellent treatise on mortgages, Vol. 2, § 1801, employs this language: "Generally, the purpose for which the power of sale is given, being to afford an additional and more speedy remedy for the recovery of the debt, the mortgagor is by his contract bound to exercise the necessary promptness in fulfilling it; and can not complain of a legitimate exercise of the power. If in any case it is attempted to pervert the power from its legitimate purpose, and to use it for the purpose of oppressing the debtor, or of enabling the creditor to acquire the property himself, a court of equity will enjoin the sale or will set it aside after it is made. Of course, so long as the creditor exercises only his legal right, although this be contrary to the wishes and interest of the mortgagor, the court will not interfere to enjoin a sale." In section 1804 is this language: "Courts of equity will interfere by injunction to prevent a sale under a power in a mortgage or trust deed, when, by reason of fraud, want of consideration, or otherwise, the collection of the debt would be against conscience, and the sale would work a great and irreparable injury. To warrant this interference the complainant must allege specifically the grounds on which the application is based. General statements and inferences from facts are not sufficient." Section 1805: "The court will enjoin a sale only when the petitioner's rights are clear, or free from reasonable doubt. He must show also a good reason for asking the interference of the court. He must show that the mortgagee is about to proceed in an improper or oppressive manner, and not merely that he might adopt a different remedy."—*Struve v. Childs*, 63 Ala. 473; *Vechte v. Brownell*, 8 Paige, 212; *Powell v. Hopkins*, 38 Md. 1; *Meysenburg v. Schlieper*, 46 Mo. 209; *Sloan v. Coolbaugh*, 10 Iowa, 31; *Van Bergen v. Demarest*, 4 Johns. Ch. 37; *Wilkins v. Gordon*, 11 Leigh, 547; *Crenshaw v. Seigfried*, 24 Grat. 272; *Kornegay v. Spicer*, 76 N. C. 95.

The present bill fails to come up to this rule, and fails to show a ground for equitable relief. Whether it can be so

30

[Mohon v. Tatum, Guardian.]

amended as to give it equity, we can not certainly know; and coming before us simply on interlocutory rulings by the chancellor, we can not finally dispose of it. The appeal is prosecuted from the decretal order of the chancellor overruling the demurrer and refusing to dissolve the injunction. The cause is still pending in the court below.

The demurrer should have been sustained, and, unless the complainant offer an amendment to his bill, showing the account is so complicated that the parties can not ascertain the amount due, then the bill should be dismissed. To make such amendment sufficient, it must set forth the facts which show the complication, or it must show some other special exceptional equity. If not so amended, the injunction must be dissolved, and the bill dismissed.

Demurrer to the bill sustained, at the costs of the appellee. Remanded for further proceedings in accordance with this opinion.