# Jones v. McPhillips.

*Bill in Equity by Creditors of Insolvent Bank, for Removal of Assignee, Appointment of Receiver, and Administration of Trust by Court.*

1. *Pleadings construed against pleader.*—Pleadings must be reasonably certain, and when assailed by demurrer, if susceptible of more than one construction, that construction must be adopted which is least favorable to the pleader.

Vol. LXXVII.

[Jones v. McPhillips.]

2. *Requiring bond of assignee, or trustee.*—A trustee, or assignee, in a deed of assignment for the benefit of creditors, though relieved from giving bond by the instrument itself, may be required to give bond by the beneficiaries of the deed (Code, § 3735); and when it appears that he has offered to give bond, and has done so under the order of the court, the fact that the assignment did not require a bond is no reason for removing him, at the instance of the creditors, and appointing a receiver of the property in his stead.

3. *Trusts for creditors ; when equity will assume jurisdiction, at instance of beneficiaries.*—Courts of equity have original jurisdiction of trusts, and will enforce their execution at the instance of the beneficiaries; but, when a general assignment is made by an insolvent bank, for the benefit of its creditors, a court of equity will not at once assume jurisdiction, at the instance of some of the creditors, remove the assignee, and appoint a trustee or receiver in his stead, unless it is shown that the assignee is incompetent or unfit for his office, or that he has been guilty of some neglect or breach of duty.

4. *Same.*—That the assignee is a young man, and has had but little business experience; that his property is inconsiderable when compared with the value of the property conveyed by the assignment, while he was not required to give bond; that he was a director of the bank at the time the assignment was made, and also during the period of the mismanagement of its affairs, which resulted in its insolvency, through excessive loans to its president against bitter opposition in the board of directors—these facts, as alleged, are not sufficient to justify his removal, at the instance of creditors, and the appointment of a receiver in his stead, when it does not appear that he participated in the alleged mismanagement, or voted with the majority in favor of the excessive loans to the president; and when it does appear that he has already offered to give, and has given bond for the faithful performance of his duties.

5. *Remandment on reversal, for amendment.*—When the chancellor overrules a demurrer to a bill, and this court, on appeal, reverses his judgment, a final decree will not be here rendered, but the cause will be remanded, in order that the complainant may have an opportunity to amend his bill, if he desires to do so.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 9th July, 1884, by James McPhillips and others, depositors and creditors of the Bank of Mobile, against the said bank, its board of directors as individuals, and Winston Jones, as trustee or assignee in an assignment which said bank had executed to him for the benefit of its creditors ; and asked the court to assume jurisdiction of the trust created by the assignment, to remove the assignee, and to appoint a receiver as trustee in his stead. The material allegations of the bill are stated in the opinion of the court. By amendment, the names of the directors as defendants were struck out. Demurrers to the bill were filed by the bank, and by the assignee, each assigning numerous causes of demurrer. The cause being submitted to the chancellor on the demurrers, and also on motion to appoint a receiver, he rendered a decree assuming jurisdiction of the trust, but overruled the demurrers, and refused to appoint a receiver. The assignee appeals from this decree, and here assigns it as error.

[Jones v. McPhillips.]

GAYLORD B. CLARK & F. B. CLARK, Jr., for the appellant, and with them HAMILTONS, representing certain creditors and depositors.—General assignments, in trust for creditors, are approved in equity, as meritorious.—2 Perry on Trusts, § 585 ; Bump on Fraud. Conv. §§ 384-5. The assignor has a right to select the trustee, and the latter has a reasonable time within which to act.—Burr. on Assignments, §§ 91, 492 ; Bump Fraud. Conv. 366. The appointment of a creditor, or a joint debtor, or a relative, or the president of the corporation which makes the assignment, is not objectionable, as showing danger to the trust.—*Pope v. Brandon*, 2 Stew. 401 ; Bump Fraud. Conv. 366 ; 2 Perry on Trusts, § 558 ; Burr. Assignments, § 91. The trustee himself may at any time come into equity, asking the instructions or protection of the court in the discharge of his duties ; but, to authorize its interference at the instance of creditors, or other beneficiaries, they must show some unfitness, neglect, delay, or maladministration on the part of the trustee, or some danger to the trust estate.—1 Perry on Trusts, §§ 275-7 ; 2 *Ib.* §§ 816-19 ; High on Receivers, §§ 411-12 ; *Berry v. Williamson*, 11 B. Monroe, 245, 271 ; *Micou v. Moses Brothers*, 72 Ala. 439 ; Field's Lawyer's Briefs, § 331. In this case, the bill was filed when the ink was scarcely dry on the deed of assignment ; and no neglect, nor act of misconduct, is charged against the trustee. His removal is sought, under general charges of unfitness, which, when analyzed, resolve themselves into these : that he is a young man, and has had but little experience ; that he is poor, and that he was a director of the bank during the mismanagement which culminated in its insolvency. But it is not alleged that he is in any way responsible for such mismanagement, nor that he did not in fact oppose it ; and a director is not personally responsible for an error in judgment, from which loss ensues.—*Godbold v. Br. Bank*, 11 Ala. 191 ; *Sterling's appeal*, 71 Penn. St. 11 ; *Arthur v. Griswold*, 55 N. Y. 400 ; *Turquand v. Marshall*, L. R., 4 Ch. 386. Though the deed required no bond of the assignee, creditors may require him to give one (Code, § 3735), and the record shows that he has in fact given one. It has been held that not even insolvency is a sufficient objection to an assignee, character being esteemed as solvency.—2 Perry on Trusts, § 819 ; Bump. Fr. Conv. 377. As to the age of the assignee, the law has prescribed no particular age as a qualification for the office ; and as to the experience necessary for the "discharge of the duties of so great and complicated a trust" as this is alleged to be, that is necessarily a mere matter of opinion, and can not be guaged by any legal test.

HANNIS TAYLOR, *contra.*—"As soon as an assignee accepts a

[Jones v. McPhillips.]

general assignment for the payment of debts to creditors, either directly or by implication, he becomes a trustee for them; and as soon as they have notice, they may compel the execution of the trust in a court of equity."—2 Perry on Trusts, § 594, citing the following cases: *Moses v. Murgatroyd*, 1 Johns. Ch. 119; *Shepherd v. McEvers*, 4 Johns. Ch. 136; *Pingree v. Comstock*, 18 Pick. 46; *Wier v. Tannehill*, 2 Yerger, 57; *Nicoll v. Munford*, 4 Johns. Ch. 523; *Ward v. Lewis*, 4 Pick. 518; *New Eng. Bank v. Lewis*, 8 Pick. 113; *Robertson v. Sublett*, 6 Humph. 313; *Pearson v. Rockhill*, 4 B. Monroe, 296; *Kelly v. Babcock*, 49 N. Y. 320; *Hulse v. Wright*, Wright (Ohio), 61. This principle is recognized in several decisions of this court.—*Sledge v. Clopton*, 6 Ala. 598; *Eldridge v. Turner*, 11 Ala. 1049; *Andrews v. Hobson*, 23 Ala. 232. The equity of the bill not only rests on this general principle, but special grounds for the interference of the court are shown. The trust is complicated, and the property worth nearly half a million of dollars; its administration is committed by the deed to a young man, who has had little (if any) experience in such matters, and who is alleged to be incompetent; no bond is required of him, and his own estate is inconsiderable, when compared with the value of the property intrusted to his charge; and he is charged with participation in the mismanagement of the affairs of the bank which has brought about its insolvency. These special circumstances present cogent reasons for the interference of the court, and they are all admitted by the demurrer.

(On application for a modification of the decree first rendered.) The appeal is taken from the decree overruling the demurrers, and, of course, the complainants had no opportunity to amend their bill. On a reversal of that decree, this court will remand the cause, in order that the complainants may, if they desire, remedy the defects of their bill by amendment. *Kingsbury v. Milner*, 69 Ala. 505; *Bishop v. Wood*, 59 Ala. 253; *Little v. Snedicor*, 52 Ala. 167; *Rose v. Gibson*, 71 Ala. 42; *Massey v. Modawell*, 73 Ala. 421; *Yonge v. Hooper*, 73 Ala. 121.

STONE, C. J.—On the 8th day of July, 1884, the Bank of Mobile, pursuant to a voted order of its board of directors, made a general assignment to Winston Jones, assignee, conveying all its property for the benefit of all its creditors, giving no preferences except as the law secures. Jones was one of the directors of the bank. He had been selected as trustee by the board of directors, and he accepted the trust. The assets assigned are estimated at four or five hundred thousand dollars; the liabilities much larger. The depositors who receive no interest on their

deposits—a preferred class—will probably exhaust the entire assets, and fall short of realizing their entire demands, leaving nothing for general creditors and share-holders.

On the 9th day of July, 1884, James McPhillips, and other creditors of said bank, representing claims in amount between ten and fifteen thousand dollars for deposits made in the bank, filed the bill in this case, in favor of themselves and all other creditors who would come in and make themselves parties according to the rule in such cases, and prayed—first, that the control and administration of said trust be transferred to the Chancery Court; and, second; that a receiver be appointed to execute the trust, instead of Winston Jones, the assignee named in the assignment. The bill was sworn to, and the material averments relating to the relief prayed are in substance as follows : That the president of the bank, Danner, was indebted to the bank before he became its president, and "that for this reason, and for the further reason that the said Danner was engaged in a large and hazardous business, which compelled him to borrow large sums of money, there was serious opposition on the part of some of the directors to his election to the presidency of said bank. Your orators further aver, upon information and belief, that after the said Danner was so elected president, he continued to borrow money from said bank, for use in his hazardous business, until the total sum borrowed by him reached the enormous sum of one hundred and sixty thousand dollars, or thereabouts,—a sum in excess of the real capital of the bank. Your orators further aver, that all this mismanagement of the affairs of the bank was done with the full knowledge and assent of the said board of directors, . . . and that such mismanagement was in violation of the trust imposed upon them as such directors. . . . Your orators aver that, on the day on which said failure occurred (July 8th, 1884), the said board of directors made a general assignment of all the bank's assets and property of every kind to Winston Jones, in which is given him almost unlimited power to do almost every act which said corporation itself could do, in winding up its affairs." The bill, after averring that the property thus assigned " amounts to several hundred thousand dollars " in value, proceeds as follows : " That the said assignee who is endowed with this great trust, and with these ample powers, was one of the board of directors of said bank, through whose mismanagement the trouble and failure of said bank was brought about, and he is now a director of said bank ; that said assignee is a very young man, with little or no experience, or fitness to discharge such a great and complicated trust as that imposed upon him in this case, and that he can not, in the opinion of complainants, discharge it efficiently, to the best interest of all con-

[Jones v. McPhillips.]

cerned ; that said assignee has been put in unlimited control of hundreds of thousands of dollars in property and money, without any security whatever, and the individual property owned by him bears no considerable relation to the value of the property intrusted to him ; that there has been . for a long time a serious and bitter feud in the directory of said bank, to which the said assignee has been a party ; that the said trust is, from its very nature and terms, one which can not be effectively managed and discharged, and dividends duly declared, except under the jurisdiction and direction of a court of equity."

We have now stated every material averment of the bill, which is relied on as furnishing grounds for transferring the administration of the trust to the Chancery Court, and for placing it in the hands of a receiver. It is not shown when Danner was chosen president of the bank, nor is it averred whether or not Jones favored his election. It is not averred that Jones, as a director, favored the excessive loan to Danner, the president ; nor that he was one of the directors who favored or contributed to the mismanagement which ruined the bank. Governing bodies, such as boards of directors, are presumed to be controlled by majorities ; and it being averred that there was a feud among the members of the board, we are furnished with no means of determining whether he was with the controlling majority, or with the dissenting minority. Pleadings must be reasonably certain, and, when susceptible of more constructions than one, that must be adopted which is least favorable to the pleader. There is not enough averred in the bill. tested by the rules above, to justify us in finding, on the admissions implied from the demurrer, that Jones favored Danner's election, or that he was even a director at that time ; nor are we justified in finding that he favored the excessive loan to Danner, or that he is personally responsible for any part of the alleged mismanagement which ruined the bank.

The chancellor refused to appoint a receiver, but overruled the demurrer to the bill—decreeing that the trust should be administered in the Chancery Court. From that decretal order the demurrants prosecute the present appeal.

One special ground urged for equitable interference is, that the assignee has given no bond. In relation to this, our statute (Code of 1876, § 3735) makes provision for requiring bonds from trustees, such as Jones is in the present case. On petition of complainants, Jones has been required to give, and has given bond. It is, perhaps, due to him that we should say, he appears to have made the offer, in his answer, to give bond. This was before any motion was made requiring him to do so.

. The equity of the bill is attempted to be maintained on the broad principle, that there is a trust, in which the complainants

are beneficiaries, and that equity will take charge of, and direct its administration, because trust is one of the original grounds of equity jurisdiction. In Perry on Trusts, § 594, it is said: "As soon as an assignee accepts a general assignment for the payment of debts to creditors, either direct or by implication, he becomes a trustee for them; and as soon as they have notice, they may compel the execution of the trust in a court of equity." The argument based on this language is, that the beneficiaries under such assignment, just so soon as they have notice that such trust has been accepted by the assignee, may demand, as matter of right, that the trust shall be administered in the Chancery Court. If a correct interpretation of the author's language make it mean what is claimed, he stands almost, if not quite alone, in the assertion of such principle. It is very true, that equity compels the execution of trusts, and, when it asserts its compulsory power, it does so in the Chancery Court. It is there alone it has power to act. But, the mere existence of a right, without more, does not put the machinery of the law in operation. There must be a right, and a failure or refusal of the party on whom the duty of payment or performance rests, to pay the debt, or to discharge the duty. A mere debt, unless there is a breach of the contract by a failure to pay according to its terms, gives no right of action. Chancery compels the specific performance of contracts, but only after there has been a failure to perform, and, in most cases, a refusal, on the part of the obligor. Equity sometimes raises and enforces trusts, but it is only when rights have been wrongfully withheld from parties complaining. The law, in its active forms, redresses grievances, and enforces rights which can not otherwise be reduced to actual enjoyment. It gives no encouragement to a needless resort to its coercive processes. It has no condemnation for the citizen who is peaceably doing his duty, and wronging no one.

We can not think, however, that Mr. Perry intended to be understood in the sense above considered. The authorities he cites give no sanction to such doctrine. In *Moses v. Murgatroyd*, 1 Johns. Ch. 119, the trust funds were being misapplied to purposes other than those for which the trust was created, and chancery restrained the abuse. *Gray v. Thompson, Ib.* 82, presented the case of a trustee, who neglected for many years to distribute the trust funds among the creditors; chancery compelled him to make distribution, and to pay interest on the money, thus improperly withheld. *Shepherd v. McEvers*, 4 Johns. Ch. 136, was a case of misappropriation of the trust fund by the trustee, not distinguishable in principle from *Moses v. Murgatroyd. Pingree v. Comstock*, 18 Pick. 46, was a case of misuse of the trust funds by some of the

[Jones v. McPhillips.]

creditors, and neglect of duty by the assignee. *Weir v. Tannehill*, 2 Yerger, 57, presented the case of a refusal by the trustee to distribute to the creditors the proportion to which they were entitled. *Nicoll v. Munford*, 4 Johns. Ch. 522, rests for its equity on the facts, that the property in controversy was held in joint ownership between two; that one party had sold and conveyed his interest, and the other had unlawfully appropriated such interest to the liquidation of an alleged balance due him. *Ward v. Lewis*, 4 Pick. 518, was the case of a trustee attempting to deny the trust, after having once accepted it. *New England Bank v. Lewis*, 8 Pick. 113, arose out of a refusal by the assignee to pay preferred creditors, and the exhaustion of the fund in the payment of non-preferred claims. *Robertson v. Sublett*, 6 Humph. 313, is similar to *Gray v. Thompson, supra.* The case of *Pearson v. Rockhill*, 4 B. Monroe, 296, was an attack, by non-preferred creditors, on a deed of trust or assignment, seeking to set it aside as fraudulent. *Kelly v. Babcock*, 49 N. Y. 318, was a suit at law for money had and received, in which it was attempted to show that defendant had received money, which, *ex æquo et bono*, should be paid to the plaintiff. We repeat, none of these authorities furnish any support to the interpretation claimed of Mr. Perry's language. We must suppose his meaning was, that the faithful execution and settlement of trusts proper could only be enforced in a court of equity; and whenever rendered necessary, whether by the ignorance, willfulness, or bad faith of the trustee, the court, on proper application, will take jurisdiction, and see that the trust is executed in its true spirit. Thus interpreted, our own rulings harmonize with it. *Benagh v. Turrentine*, 60 Ala. 557; *Clark v. Eubank*, 65 Ala. 245; *Moore v. Randolph*, 70 Ala. 575; *Clark v. Knox, Ib.* 607; *Clark v. Hughes*, 71 Ala. 163; *Royall v. McKenzie*, 25 Ala. 363.

In 1 Field's Lawyer's Briefs, § 331, is a correct statement of the principle, in the following language: "In case of a neglect, unreasonable delay, or failure of the assignee to execute the trust created by an assignment, or to account or make distribution, or in case of a wrongful distribution of the proceeds, any creditor interested in the assignment may, in the absence of statutory regulations on the subject, on general principles applicable to such cases, proceed against the assignee in equity, and compel him to execute the trust and perform his duty in the premises." The following authorities, cited by the author, support this statement of the principle.—*Congregational Society v. Trustees*, 23 Pick. 148; *Fitch v. Workman*, 9 Metc. 517; *McCrea v. Purmort*, 16 Wend. 460; *N. Y. Ins. Co. v. Roulet*, 24 Wend. 505; *Keyes v. Buist*, 2 Paige,

311; *Wright v. Henderson*, 7 How. Miss. 539. We hold that the bill, in this aspect of its asserted equity, can not be maintained.

The question before us must be determined on the special grounds averred in the bill. We have disposed of some of the grounds urged for the relief prayed—namely, that Jones, the assignee, was one of the directors of the bank when the large credit was extended to Danner, and when there was other mismanagement, which collectively led to the bank's failure, and had given no bond. The other averred grounds are, that Jones is a very young man, has little or no experience or fitness to discharge such a great and complicated trust, and that his individual property bears no considerable relation to the value of the trust property. These are very general, if not indefinite averments. They intimate no apprehension of dishonesty, or bad faith. The bill was sworn to, and, considering it and the affidavits offered *pro* and *con*, the chancellor declined to appoint a receiver. If this order of the chancellor was before us for review, we would not feel inclined to disturb it. This ruling of the chancellor convinces us that, in making the decretal order, taking jurisdiction of the administration of the trust, he was influenced, not by the special grounds averred in the bill; but that he founded his ruling on the naked ground, that equity has jurisdiction of the administration of trust estates. We have shown that in thus holding he erred.

Recurring to the special grounds, we consider them insufficient. It should require a strong case—much stronger than is here shown—to justify the court in interfering with the trustee's administration of a trust, at the very threshhold of his duties.—*Middleton v. Dodswell*, 13 Ves. 266; *Poythress v. Poythress*, 16 Ga. 406; *Barkley v. Lord Reay*, 2 Hare, 306; *Ogden v. Kip*, 6 Johns. Ch. 160; *Browell v. Reed*, 1 Hare, 434; *Hathornthwaite v. Russell*, 2 Atk. 126; *Anon.*, 12 Ves. 4. Dishonesty, faithlessness, fraud, incompetency, or inefficiency, sufficiently averred in its constituent facts, would justify the displacement of the trustee or assignee, and the transfer of the trust to the Chancery Court. Without a cause shown sufficient to remove or displace the trustee or assignee named in the assignment, a bill, filed as this was, is without equity, unless it sets forth, with proper averments of facts, some special equitable ground, why the trustee shall not proceed without instructions from the Chancery Court, and shows, further, that the trustee persists in the execution of the trust, without invoking such instructions. There are many cases of questionable interpretation, in which it is both the privilege and duty of the assignee to obtain the court's instructions. Refusing to do so, and assuming to act on his own unaided

[Watson v. Glover.]

judgment, we will not say a beneficiary, who shows himself injured by the erroneous judgment of such assignee, may not himself, at any stage of the administration, invoke and obtain a decree of the Chancery Court, correcting such erroneous judgment of the assignee, and properly administering the trust. Of course, such bill by a dissatisfied beneficiary would be at the risk and peril of establishing and fastening error on the assignee, and should not be resorted to, except in cases of threatened injury, for which there is no other adequate means of redress, or prevention. It is not our purpose, however, to decide the question last discussed. We allude to it for the purpose of saying, that our judgment, pronouncing the present bill insufficient, is not intended to be understood as declaring that in no case can a beneficiary invoke the powers of a Chancery Court, while the trust is being administered. We leave this question open.

The demurrer to the bill in this cause should have been sustained; but the bond executed by the assignee is not vacated or impaired by this decree. It will remain of file as a security to the beneficiaries, that the assignee will faithfully administer the trust, and properly account for and pay over the proceeds.

On June 25th, 1885, we delivered an opinion reversing the decretal order of the chancellor rendered in this case, and decreed that the bill be dismissed. In rendering a final decree here, coming before us as this case did, we departed unwittingly from our uniform rule in such cases. We should have declared, that the chancellor erred in overruling defendant's demurrer, and remanded the cause, that the bill be dismissed in the court below, unless so amended as to cure the defects in the present bill. Decreed accordingly.—*Security Loan Asso. v. Lake,* 69 Ala. 456; *Rapier v. Gulf City Paper Co., Ib.* 476; *Rose v. Gibson,* 71 Ala. 35; *Conner v. Smith,* 74 Ala. 115.

The costs of the appeal to be paid by the appellees.