## TOLIVER et al. v. BOARD of MANAGERS OF IMPROVED INDUSTRIAL ORDER OF WISEMEN et al.

No. 19026. Opinion Filed March 25, 1930.

P. A. Chappelle and Wm. B. Thompson, for plaintiffs in error.

J. J. Bruce and J. A. Harris, for defendants in error.

BENNETT, C. This was an action by J. R. Toliver and F. T. Smith, plaintiffs, for the benefit of themselves and others similarly situated, against Improved Industrial Order of Wisemen, a corporation, and the individuals constituting its board of managers, for the appointment of a receiver for protection of trust funds and in order that the association might be operated under the rules and regulations thereof.

It was alleged, among other things, by the petition, that the association is an Oklahoma corporation, operated by a board of managers of nine members, who severally acquire and hold office in the manner provided in its constitution and until their successors are elected and installed.

The constitution provides for lodges other than the parent lodge, and under this provision many lodges have sprung up in several states. The articles provide that said association, through its officers, shall have power to levy such assessments upon local branches and their members as may seem necessary in addition to the charter fees and other revenues to meet sick and disability claims of its members.

It is further alleged that the local branches of the order in the several states are subject to the authority and control of the defendant corporation and its officers, and that said association has established what is known as an endowment fund, in which part at least of the members participate upon payment of certain assessments made therefor, based upon the time the member has been connected with the association. In return the several members receive a certain sum weekly in case of sickness, and 25 per cent. of each assessment levied goes to an endowment fund; that 75 per cent. of the amount received is required to be set aside and retained as reserve for sick funds, which may be left under the control of the local lodge. A general fund is also provided for arising from a per capita tax consisting of 50 cents per member, revenue derived from supplies and charter fees received from local lodges. From the general fund are paid the expenses of maintaining and carrying on the business of the corporation. There have been established in Oklahoma and Kansas nearly 100 lodges, the membership in which exceeds 2,500 persons who are participating members in the endowment fund benefit as aforesaid.

The personal defendants constitute the board of managers of the association. It is alleged that the corporate and personal defendants are all insolvent, that claims amounting to several hundred dollars are

188

due beneficiaries of deceased members, but the names of such beneficiaries and the amounts due them have been wrongfully kept secret from plaintiffs; that there is due the Grand United Order of Odd Fellows, Oklahoma Jurisdiction No. 35, nearly $2,000; that since May, 1925, there has been collected an aggregate sum of more than $14,000 from various sources and paid to said order; that said sum has been misapplied, squandered, and lost by the corporation by reason of the unfaithfulness, extravagance, and wrongful conduct of said officers.

In effect, the said officers are charged with fraudulent handling and manipulation of the said assets, the payment to themselves of improper salaries, the making to their friends of large donations and gratuities without color of right, by which the funds of the association have been exhausted, and that they have transferred all the moneys of the endowment fund into the general fund, and have spent and are dissipating same in violation of the regulations of the order, etc.

It is further alleged that H. R. Edwards and E. T. James dominate and control the other board members and operate the association exclusively for their personal profit, and that they are, without right, paying large monthly sums of money to their friends; that the other board members are simply dummies who act for and on behalf of the two said dominant factors; that the managers have refused to account for or report to the membership the condition of the order and the amount of moneys collected and disbursed, and that if said members are permitted to remain in control, the assets will be wholly lost to the members of the order and the endowment fund will be lost to those who have built up the same by the payment of assessments; that these plaintiffs have attempted in vain to secure from said officers, and also through the Supreme Lodge, reports of collections and disbursements of money made since May, 1925.

The prayer is for the appointment of a receiver to take charge of and protect its funds and to manage the association under the rules and regulations of the order under direction of the court, and for an accounting by defendants.

A temporary restraining order was issued by the court on October 20, 1927, wherein it was ordered that defendants be restrained from using or spending funds of the order until further orders of the court, and the

28th of October 1927, was set for hearing the application for injunction and for the appointment of a receiver. On October 28th the restraining order was continued in effect until November 7th.

There was filed by defendants first a special appearance and motion to quash summons; later, a denial of jurisdiction upon the ground that the defendants were nonresidents of Tulsa county, and that the association was located in Muskogee county, and finally a motion to dissolve the injunction and to dismiss the action upon the several grounds: (1) Petition of plaintiffs is insufficient to entitle them to relief. (2) The facts set out in the petition show that no grounds exist for equitable interference. (3) That the plaintiffs cannot maintain their action, and that this court has no jurisdiction to grant the relief prayed for. (4) That there is a defect of parties plaintiff and defendant. (5) That the action should have been brought in Muskogee county. (6) Plaintiffs have no legal capacity to sue. (7) That the petition of plaintiffs fails to state a cause of action. Thereafter the defendants' motions were overruled, and the restraining order continued until December 9, 1927, when the court heard and sustained the motion to dismiss the cause on the ground that the court was without jurisdiction, and plaintiffs appeal.

The parties agree that but one question is presented for determination. The same is stated by defendants in the following words:

"The only proposition presented by this record, is whether or not these plaintiffs can prosecute this action in their own right and name under the laws applicable to fraternal beneficiary associations without being authorized by the Attorney General at the request of the Insurance Commissioner? We say they cannot."

This question depends upon the construction of section 6790, C. O. S. 1921, the applicable part of which is:

"**Failure to Make Report—Penalty.** Any such association, whether organized under the laws of this state, or of any other state, territory or province, refusing or neglecting to make the report as provided in this article, shall be excluded from doing business within this state. The Insurance Commissioner within 60 days after any such association's failure to make such report, or in case any such association shall exceed its powers, or shall conduct its business fraudulently, or shall fail to comply with any of the provisions of this article, must give notice in writing to the Attorney General, who shall immediately commence an action against any such association to enjoin it from carrying on any business within this

state. No injunction against any such association shall be granted by any court to enjoin it from transacting business in this state, except on application of the Attorney General thereof, at the request of the Insurance Commissioner, whether the state or a member or other party seeks relief. * * *"

It was by virtue of the provisions of the foregoing section that trial court sustained defendants' motion to dismiss.

It is conceded that defendant association is a fraternal beneficiary corporation, and comes under the provisions of chapter 51, art. 4, C. O. S. 1921. The defendant in error, in its original brief, cites no authorities other than the statutes. The plaintiff in error cites Havemeyer v. Superior Court (Cal.) 24 Pac. 121, and many authorities which deal with the inherent jurisdiction of a court of equity, with reference to trust funds and its plenary power over unfaithful trustees who forget or disregard the rights of those for whom they act. But none of the cases purport to deal with a statute similar to ours.

In the supplemental brief, and in the oral argument, we were referred by defendants to State v. Bankers' Union of the World et al., 71 Neb. 622, 99 N. W. 531. In that case a statute very similar to ours was under discussion. The case was brought by the Attorney General after notice given him by the Auditor indicating irregularities, and it was held that, under their statute, the remedy was to enjoin the defendant, the fraternal order, from doing business within the state. The judgment gave defendant 60 days within which to conform to requirements of the judgment as a condition precedent to reinstatement. There were many irregularities relied on there. The annual reports required by the statute were not made; the management of the company, as provided for in the charter, was not under directors elected by the members, nor was the government a representative one in form as provided for in the articles of association. It appears that the company was in straits for money, and that certain moneys were being misapplied by the directors. The court says:

"The evidence shows a desire and effort on the part of the Auditor to perform the duties enjoined upon him by statute, and his action in commencing these proceedings was not only justified, but required by the facts as disclosed in the evidence."

The Attorney General insisted that the defendant should be dissolved, but the court held otherwise, and used the following language:

"It is the duty of the court to determine and point out the particulars in which the defendant has failed to comply with the law, and to enjoin the defendant from proceeding to carry on its business until these delinquencies in these respects have been corrected."

It will thus be seen that the cases did not involve the question as to the right of a member or policyholder of the company to prosecute an action for the protection of a trust fund, or to curb the fraudulent acts of faithless officers with respect to substantial property rights. It is well worth noting, however, that there is a very strong dissenting opinion by the Chief Justice. It should be noted also that the matters chiefly complained of there were that defendant did not perform its duties to the state, did not file its reports, and did not organize according to the law. Such failures alone, if known, would have prevented its securing a permit to do business. We think it clear that that case should not determine even by analogy the case at bar.

We are next referred to Barton v. International Fraternal Alliance of Baltimore City, 85 Md. 13, 36 Atl. 658. There David Barton et al. sought to restrain defendant from disposing of its assets, asked for a receiver, that the company be declared insolvent, and for general relief. The statutory provisions in Maryland are very similar to the ones here. The court in the opinion says:

" 'No injunction against any such association shall be granted by any court, except on application as set forth in this section.' This clause must be construed in connection with the preceding; and, so taking it, can it mean anything else than that the word 'injunction' refers to an injunction of the same nature as that already referred to,— that is, an injunction to restrain the company 'from carrying on its business,'—and that the cases in which it should not be granted at the instance of other persons are those where the commissioner is to make the application himself? In other words, we think the Legislature intended by this clause to provide that injunctions to restrain the corporation from carrying on its business in cases where it has failed to comply with the statute, or exceeded its powers, or is conducting its business fraudulently, can be granted only when applied for by the Insurance Commissioner, leaving in all other respects the powers of a court of equity unimpaired. It is clear the section was not intended to create another method by which corporations may be dissolved, and their charters forfeited. The next clause of the section provides that when 'the report shall be made, or overt act or violation complained of shall have been corrected, and the costs

of the action paid by it,' the Insurance Commissioner shall reinstate the association, and 'not until then shall such association be allowed to again do business in this state.' It surely cannot be successfully contended that such provisions are intended to supersede the effective remedies for the abuse, misuse, or nonuse of corporate powers afforded by section 295 of article 23 of the Code, or the right conferred on stockholders and creditors to commence proceedings against insolvent corporations in section 264 of article 23 of the Code, as amended by Act 1894, c. 263. Nor must we be understood as implying that if the officers should be guilty of fraud or misconduct, by which the rights of parties are injuriously affected, it is not within the power of a court of equity to enjoin or otherwise decree, so that justice may be substantially done between the parties. It is only, as we have stated, for the causes set out in the act that it cannot grant an injunction restraining the corporation from doing business except upon the application of the Insurance Commissioner."

And the court proceeded to inquire into the question of insolvency, with reference to which the court finally says:

"With reference to this (insolvency), it is only necessary to say that the answers deny all the allegations of fraud, and swear away all the equities of the bill."

The above authority does not sustain defendants' contention, for it points out distinctly that the rights of members, in so far as their property interests may be threatened by fraudulent acts of officers of a fraternal order, are not circumscribed by the quoted statute, nor is it intended that the power of a court of equity in such premises be limited by the statute.

In the case of McCall, Atty. Gen., v. Grand Lodge Knights of Pythias (Ala.) 115 So. 254, there are facts pleaded and proved and contentions made which are strongly analogous to those found in the case at bar. It was a bill in equity for the appointment of a receiver to take charge of and administer the assets of a fraternal insurance company. It was alleged that the controlling officers were dissipating and depleting its endowment fund, and that the management was fraudulent, reckless and extravagant, and that a receiver was necessary to protect the assets from loss. The defendant interposed a plea to the jurisdiction of the court to the effect that, if the proceeding rested upon the provisions of sections 8495-8 of the Code of 1923, a report and recommendation by the Superintendent of Insurance to the Attorney General was a condition precedent, and, further, that the Attorney General was without interest in the subject-matter, and had no authority in any event to institute a suit of this character. The plea to the jurisdiction was sustained. The court says in the opinion:

"We are of the opinion the above-noted sections 8495-8497 are without application to this bill. These sections look to quo warranto proceedings leading to a final dissolution of the order and a closing up of its affairs. Such is not the purpose of this proceeding. Its object is the protection and preservation of a trust fund, which is being depleted and dissipated fraudulently and wrongfully, to the irreparable injury of policyholders who have a property right interest in such funds. Very clearly, a policyholder under these circumstances has the right to invoke equity's jurisdiction for the protection of trust funds, and may maintain a bill of this character: Howze v. Harrison, 165 Ala. 150, 51 So. 614; Jasper Land Co. v. Waller, etc., 123 Ala. 652, 26 So. 659; 1 Pom. Eq. Jur. (4th Ed.) sec. 151; Thos. A. Edison v. Edison Phonograph Co., 52 N. J. Eq. 620, 29 A. 195; Chicago Mut. Life Ass'n v. Hunt, 127 Ill. 257, 20 N. E. 55, 2 L. R. A. 549.

"In such a proceeding, the policyholder would not seek a dissolution of the order, but that a court of equity, through the appointment of a receiver, take charge to prevent a further misappropriation and waste of the trust fund and protect the same, to the end that the defendant order and endowment department might continue to function, and be carried on as a 'going concern,' and the contracts of insurance should be upon a sound financial basis, and 'executed in their fullest integrity.'

"The bill was filed in the name of, and by, the Attorney General, evidently out of regard to the language of section 8498, Code of 1923, which reads as follows: 'No application for injunction against, or proceedings for the dissolution of, or the appointment of a receiver for, any such domestic society or branch thereof shall be entertained by any court in this state, unless the same is made by the Attorney General.'

"Confessedly, this language, standing alone, is broad and comprehensive, but it must be construed in view of its relation to the context. The statutory provisions constitute but a codification of the Act of April 24, 1911, p. 700, these particular provisions being found in sections 24 and 25 of said act, and bearing the same relation therein as found in the present Code. It will be noted that the preceding provisions of the Code, just as in the original act, authorize both injunctive proceedings and appointment of receivers, and section 8498, in restricting such application to the office of the Attorney General, clearly, to our minds, had reference to the quo warranto and dissolution proceeding provided for in the preceding

sections. We are of the opinion it was not the legislative purpose to attempt any restriction upon the right of a policyholder, having so vital an interest in the subject-matter, to go into a court of equity and seek preservation of such interest and a protection of the trust funds under the well-recognized doctrine of the authorities noted. That right exists and continues in the policyholders, and these statutory provisions were intended in no manner to affect or restrict the same.

"So, construing section 8498 in connection with the preceding sections of the Code, therefore, it appears these statutes are without influence upon a case of this character, and that litigation as to the matters set up in the bill is open to any aggrieved policyholder, and without regard to participation on the part of any state official.

"It results, therefore, as our view, that this bill cannot be maintained by the Attorney General, and that the plea to the jurisdiction was properly sustained."

It seems to us that, in effect, the court, in the above case, passes broadly upon the question directly involved here. **Plaintiffs here were not seeking to dissolve the corporation, nor to enjoin its doing business within the state.** They were seeking rather to have the company do business in obedience to and consistently with the provisions of its charter and to have its trust funds protected against officials whom they alleged to be irresponsible and faithless and bent upon destroying the means for carrying out the corporate objects of the association.

In the recent case of Grand Lodge K. P. v. Shorter (Ala.) 122 So. 36, one Phillip Shorter and another filed a bill in equity for the preservation and administration of an endowment fund, the allegations being that the officers and agents of defendant were guilty of negligence, misappropriation, graft, and extravagance resulting in the depletion of the fund, and that it was necessary to preserve such fund from such mismanagement or it would be entirely lost. Objections were made to the bill that it was not filed on behalf of all the policyholders; that the derelict officers were not made parties; that only the Attorney General could file the bill; that the sole relief sought is a receiver, which is an ancillary remedy only, and that the bill is without equity. The court held the objections were not tenable; that the defendant was a trustee of the endowment fund created for the protection of the policyholders, and that the officers and agents of defendant had mismanaged the fund and had made personal gain from manipulations of the same. It was held further that complainants had a direct interest in seeing the

integrity of the fund maintained, its proper status restored and proper management given. It was also claimed that the derelict officers were necessary parties, and, again, that no sufficient steps were taken to correct the abuse of power through the organization. All of these objections were brushed aside. It was held that this was not a suit to dissolve the corporation, but only to see that the fund was properly administered by those responsible for its management. The court says in the opinion:

"We adhere to the position heretofore taken that the Attorney General is not the proper party to prosecute a cause of the nature here under consideration and maintain that a beneficiary of a trust fund may invoke interference in equity when the trustee makes disposition of the funds in violation of the trust 'in selfish disregard of the claims of other beneficiaries' (McDonald v. McDonald, 92 Ala. 537, 544, 9 So. 195, 197), and that 'dishonesty, faithlessness, fraud, incompetency, or inefficiency, sufficiently averred in its constituent facts, would justify the displacement of the trustee or assignee, and the transfer of the trust to the chancery court' (Jones v. McPhillips, 77 Ala. 314, 322), and that 'whenever rendered necessary, whether by the ignorance, willfulness, or bad faith of the trustee, the court, on proper application, will take jurisdiction, and see that the trust is executed in its true spirit' (Jones v. McPhillips, supra, page 321). * * *"

The most serious matters pointed out in that case were the withdrawing of moneys from the mortuary fund to defray grand lodge expenses, allowance of doubtful and extravagant expense items, negligence in collecting rents, and the claim that there was individual speculation with the fund. The trial court placed a receiver in charge of the entire insurance department of defendant. The appellate court modified the order so as to place the endowment fund and the mortuary and expense funds under the receiver in order that those funds might be conserved and so that neither fund might be drawn upon at the expense of the other. The receiver was also directed to take proper steps to compel the faithless officers to refund such moneys as they had wrongfully taken from the funds of the company. It will be noted that that case and the McCall Case involved the same facts and the same parties, except that in the McCall Case the action was instituted by the Attorney General, and the court held there that the Attorney General had no power to bring it, and in the other the suit is instituted by a member and the defendant argues that the Attorney General should have brought it.

The statutes governing benefit fraternal orders in Alabama, while different in their arrangement, are strikingly similar in substance to those in Oklahoma, and we might add we have examined statutes with respect to fraternal orders in most of the other states, and in large measure they are much alike in design and purpose.

In the case of Bastian v. Modern Woodmen of America (Ill.) 46 N. E. 1090, the court, in the opinion, says:

"It is also contended that, under the provisions of section 12 of the act of 1893, no suit could be maintained against a corporation of this character (fraternal association) except by the Attorney General. That section has no reference to a controversy like this, between the individual members and the corporation or its officers, to prevent the consummation of an act contrary to the articles of association and fundamental laws. It relates only to proceedings to prevent the corporation from doing business within the state for a failure to comply with the act. Complainants were members of the order, contributing to its support, and interested in its funds. A large sum was appropriated from the funds of the order to be expended in connection with and for the purpose of the proposed removal. If the action was unlawful and in violation of the compact between them and the corporation, they were entitled to prevent its consummation."

To the same general effect, also, Otto v. Journeymen Tailors Protective & Benevolent Union of San Francisco (Cal.) 17 Pac. 217.

In Benefit Societies & Life Insurance (Bacon, 3d Ed.) vol. 1, p. 65, the author says:

"Generally equity will exercise its powers to prevent diversion of funds, protect the rights of members of the associations, declaring and enforcing such rights, and will to that end even compel the delivery of a specific chattel, or place the property in the custody of a receiver, or order a sale of the property, but it will not exercise this power unless the interests of justice so require." Citing Hinkley v. Blethen, 78 Me. 221, and other cases.

See, also, volume 1, p. 110. The same volume at p. 112, par. 59, is as follows:

"When Equity Will Interfere. Upon sufficient cause shown, a court of equity will always interfere to prevent a misuse of corporate franchises, or abuse of the rights of members, and will wind up the association if it is manifest that it cannot accomplish the purposes of its organization. The com-

prehensive and flexible rules of equitable jurisprudence apply to all kinds of corporations and courts of equity are always open to those who are wronged or aggrieved by the tortious acts or the mismanagement of the officers or members of these associations. * * *" To the same effect, vol. 2, page 1209, par. 479a.

It is quite true that courts of equity are not generally interested in questions purely of discipline, or of policy, or of doctrine of a fraternal order. But where property rights are involved, and especially where trust funds are threatened, equity will intervene.

The common law gave and recognized the right of one whose property is held by another as trustee to compel its proper handling for the purpose intended. That right has been recognized by decisions from every jurisdiction. If that right is sought to be taken away by the law (even if it can be done under our Constitution) it must appear in plain, unequivocal and unmistakable language. It would seem, too, where one has an interest in a trust fund which is being dissipated and scattered by an unfaithful trustee, it would seem rather incongruous to declare that a party who was about to be irreparably injured should be forced to make his position clear to the Insurance Commissioner, who, if he were satisfied, should then approach the Attorney General, who, if he were not then engaged in other matters, might file a protective suit. The logical result of this, it seems to us, would be that probably in the average case the doors of the stable would be securely locked after the horse had been stolen.

We hold that the petition states a cause of action; that the court had jurisdiction when challenged only as violative of section 6790, C. O. S. 1921, and that therefore the dismissal of the suit was error. Wherefore, the judgment of the trial court dismissing the action is reversed, and the case is remanded, with directions that same be reinstated and proceeded with in conformity with this opinion.

TEEHEE, REID, FOSTER, and HERR, Commissioners, concur.

By the Court: It is so ordered.